752 F.2d 874
 1986 A.M.C. 74, 40 Fed.R.Serv.2d 1181,
17 Fed. R. Evid. Serv. 128
 In the Matter of The Complaint of BANKERS TRUST COMPANY as
Owner-Trustee and Monsanto Company as Chartered Owner, and
Keystone Shipping Co., As Chartered Owner and Operator of
the S.S. EDGAR M. QUEENY, for Exoneration from and
Limitation of Liability.
VILLANEUVA COMPANIA NAVIERA, S.A., Amoco Overseas Oil
Company and Amoco Transport Company, Third-Party Plaintiffs,
v.
BETHLEHEM STEEL CORPORATION, General Electric Company and
the William Powell Company, Third-Party Defendants.
Appeal of Prava CHATTERJEE.
 No. 82-1845.
 United States Court of Appeals,
Third Circuit.
 Argued May 15, 1984.
Decided Dec. 31, 1984.
As Amended Jan. 28, 1985.
 
 Harry Lore (Argued), Philadelphia, Pa., for appellant.
 James F. Young (Argued), Peter Hansen Bach, Maurice J. Maley, Jr., Krusen, Evans & Byrne, Philadelphia, Pa., for appellees, Bankers Trust Co., Monsanto Co., and Keystone Shipping Co.
 L. Carter Anderson (Argued), Hal A. Barrow, Rawle & Henderson, Philadelphia, Pa., for respondents, Paul H. Due and Richard J. Dodson.
 Before SEITZ, Chief Judge, and HIGGINBOTHAM and BECKER, Circuit Judges.OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 We are asked on this appeal to review the proceedings on a petition to vacate and set aside the settlement and release of the admiralty claim of a deceased seaman. Mrs. Prava Chatterjee, the mother of the decedent, appeals from the district court's second denial of her petition and requests that we consider the interrelated questions of whether the shipowners sustained their burden of proving that the settlement and release were validly executed and whether certain evidentiary rulings of the district court in this regard denied her procedural due process and resulted in a miscarriage of justice.
 
 
 2
 We will vacate the district court's order denying the petition to vacate and set aside the settlement and release of the admiralty claim and we will remand this matter for further proceedings consistent with this opinion.
 
 I.
 
 3
 On January 31, 1975, the chemical carrier S.S. EDGAR M. QUEENY, while making a turn in the Delaware River at Marcus Hook, Pennsylvania, collided with the S.S. CORINTHOS, as she was discharging a cargo of crude oil. The resulting explosion and fire damaged the QUEENY, destroyed and sank the CORINTHOS, and caused numerous deaths and injuries as well as extensive property damage to the BP/Sohio Terminal and to property in the surrounding Marcus Hook area. The owners and operators of the QUEENY, appellees Bankers Trust Company, Monsanto Company and Keystone Shipping Co. (collectively referred to herein as "shipowners"), brought an action for limitation of liability within one week of the accident, pursuant to the Limitations of Liability Act, 46 U.S.C. Sec. 183 (1970). In Re Complaint of Bankers Trust Co., 503 F.Supp. 337 (E.D.Pa.1980), rev'd, 651 F.2d 160 (3d Cir.1981), cert. denied, 455 U.S. 942, 102 S.Ct. 1436, 71 L.Ed.2d 653 (1982).
 
 
 4
 The Louisiana law firm of Due and Dodson ("Respondents"), which represented the survivors of all injured and deceased Indian crewmembers, filed an answer and claim on behalf of petitioner-appellant Prava Chatterjee ("Mrs. Chatterjee"), a resident of the People's Republic of Bangladesh, as survivor of Pratik Kumar Chatterjee, a crewmember killed in the CORINTHOS-QUEENY disaster.[1] Due and Dodson's representation was based upon an attorney-client contract, App. at 220a-221a, executed by Anil Ranjan Ghosal ("Ghosal"), the son-in-law of the petitioner, who purportedly represented Mrs. Chatterjee by virtue of a special power of attorney. The validity and attestation of this special power of attorney is contested by the parties.[2]
 
 
 5
 In the United States, Due and Dodson agreed to settle the Chatterjee claim for $87,000.00. Thereafter, to implement the "settlement"[3] counsel from Due and Dodson, the attorney for the shipowners, and an associate of Due and Dodson in these claims, Dean Bhishma K. Agnihotri, went to New Delhi, India where on December 17, 1975 Ghosal presented the special power of attorney to the shipowners' lawyer and signed a release of all claims relating to Patrik's death.[4]
 
 
 6
 After presentation of the executed special power of attorney and release, counsel for the shipowners wired his client to transfer the settlement funds to Due and Dodson in Louisiana. Abb.App. at 28a-33a. Due and Dodson in turn gave Ghosal a check in the amount of $29,000.00. They allege that he was also given $15,000.00 in cash, without a receipt, to complete the payment of $44,000.00 due to Mrs. Chatterjee, i.e., $87,000.00 less fees and costs. Abb.App. at 25a.
 
 
 7
 Prava Chatterjee filed her petition in the limitation of liability proceeding on May 7, 1979, three-and-one-half years after Ghosal accepted the settlement and signed the release. In the petition, she asserted that she "was not advised of the death of her son as she was living in Bangladesh and was in mourning over the death of her husband who died January 28, 1975." App. at 10a. She further alleged that she never signed any power of attorney authorizing Ghosal to act on her behalf, she never retained American counsel, and she never received any portion of the settlement proceeds. She claimed to be the only person entitled to receive the funds as Pratik Chatterjee's mother and sole heir under Indian succession law. Additionally, she maintained that the settlement was inadequate and did not represent the fair value of the claim. App. at 11a-12a.
 
 
 8
 Several months after filing this petition, Mrs. Chatterjee brought a legal malpractice action naming as defendants the law firms which had participated in the settlement[5]--Krusen, Evans, and Byrne, which had represented shipowners, and Due and Dodson, which had represented the claimants. Chatterjee v. Due, 511 F.Supp. 183 (E.D.Pa.1981). In this separate tort action, Mrs. Chatterjee sought compensatory and punitive damages in the amount of $3.25 million, alleging that the attorneys negligently entered into the settlement agreement without certification that her son-in-law was authorized to act on her behalf. She further alleged that her son-in-law had forged her name to the special power of attorney and general release. Pursuant to a stipulation of the parties approved by the district court, a Commission was held in Calcutta, India which took the depositions of Mrs. Chatterjee, Ghosal and other members of the family.
 
 
 9
 After the tort action was filed, the district court in the limitation of liability proceeding denied Mrs. Chatterjee's petition to set aside and vacate the settlement and release. A petition for mandamus was denied on July 1, 1982 (No. 82-3030) but an appeal was allowed and this court vacated the order of the district court and remanded for further proceedings, concluding that the district court erroneously held that Mrs. Chatterjee's tort action was duplicative of the instant proceeding to vacate the settlement and release and further held that denial of the petition was an inappropriate attempt to control its docket. In re Complaint of Bankers Trust Co., 636 F.2d 37 (3d Cir.1980).
 
 
 10
 On remand, the district judge denied several of petitioner's pending motions,[6] and fixed a date for hearing on October 18, 1982. In denying petitioner's October 4, 1982 Motion for Invocation of Commission in India to Take Testimony or In the Alternative to Use the Transcript of the Previous Commission, the district court ruled that
 
 
 11
 we will not permit at the trial, the use of the transcript of a commission used in another matter involving this petitioner before Judge Giles of this Court. The parties in the case before us, Bankers Trust Company, Monsanto Company and Keystone Shipping Co. are not parties in the action before Judge Giles, nor did they have the opportunity to cross examine the petitioner or witnesses at the commission in India.
 
 
 12
 App. at 7a-9a. (emphasis added).
 
 
 13
 The district court did not act on this motion until October 14, 1982, and it was not filed and mailed by the Clerk until the following day, a Friday.
 
 
 14
 At the Monday, October 18, 1982 hearing, counsel for the petitioner read portions of the former testimony of Mrs. Chatterjee taken before the Calcutta Commission on February 17, 1981 in connection with the malpractice suit. Transcript of October 18, 1982 Hearing ("Tr.") at 26-34. No reference was made to the October 6 denial of the above-mentioned motion by the district court during the hearing on October 18, 1982. According to counsel for petitioner, he did not learn of the denial of the motion until he returned to his office following the October 18 hearing, which commenced at 9:30 A.M. and concluded at 11:20 A.M. (Appellant's Brief at 8, n. 5).
 
 
 15
 On November 29, 1982 the district court again denied Prava Chatterjee's petition to vacate and set aside the settlement and release. In re Bankers Trust Co., 551 F.Supp. 609 (E.D.Pa.1982). In so ruling, the district court first concluded that Prava Chatterjee's allegations concerning Ghosal's lack of authority to settle the maritime death claim on her behalf had not been presented through in-court testimony by her and that the allegations of her attorney to that effect did not constitute competent evidence. Finding that Mrs. Chatterjee was not "unavailable" under Rule 804 of the Federal Rules of Evidence, the district court held that the allegations fell within no exception to the hearsay rule and were "not evidence which [could] be considered by [the] court in making its determination." 551 F.Supp. at 610.
 
 
 16
 The district court then proceeded to deny Mrs. Chatterjee's Second Motion for the Invocation of a Commission in India to Take Testimony or, in the Alternative, to Accept Into Evidence the Transcripts of the Depositions Taken by the Previous Calcutta Commission, for the reasons articulated in connection with the motion denied on October 14. Id. at 611.
 
 
 17
 Finally, the district court held that the shipowners had met their burden of proving under federal maritime law that the release of the admiralty claim was freely executed with full understanding and without deception or coercion under the standard articulated in Garrett v. Moore-McCormack Co., 317 U.S. 239, 246, 63 S.Ct. 246, 251, 87 L.Ed. 239 (1942).
 
 
 18
 Petitioner filed a timely motion for reconsideration. This appeal followed on December 28, 1982.[7]
 
 II.
 
 19
 One can readily lose sight of the fundamental question raised in this case, given the subtleties of the subsidiary issues on which scholars of conflicts of law, contracts, agency, and maritime law could write voluminously. Despite the fact that we must explore collateral aspects of this case in several different fields of law, ultimately, when stripped to its essence, the critical inquiry before us is a simple one of fairness: was Prava Chatterjee denied a fair trial?
 
 
 20
 The petitioner strenuously asserts that the district court deprived her of due process by denying the use of the transcript of the November 30, 1981 Calcutta Commission, as well as by denying the invocation of a new commission in India to take additional testimony. Therefore, we must consider whether the exclusion of the record of the earlier fact-finding Commission in a separate federal law suit involving Mrs. Chatterjee and some of the same parties deprived her of due process. We must then turn to the question of whether the refusal to invoke a new commission to take testimony on the circumstances surrounding the execution of the special power of attorney and the release denied Mrs. Chatterjee a fair trial--particularly in view of the fact that another federal tribunal had granted such a request as to intimately related aspects of this case.
 
 
 21
 However, before we can reach the ultimate issue of procedural fairness, we must take a lengthy journey through the related fields of conflicts of law, contracts, agency and maritime law--as a condition precedent to our assessment of whether petitioner is entitled to receive the relief requested. Our review of the district court's conclusion that the shipowners satisfied their burden of proving the validity of the settlement and release must begin with an analysis of certain preliminary questions: (a) what law governs the validity of the documents in issue; and (b) what factual issues must be resolved under the controlling legal principles.
 
 
 22
 Only after determining the controlling law and burden of proof can we consider whether the record before the district court was factually adequate to sustain findings as to whether the signature on the special power of attorney was forged, or whether the signature was fraudulently obtained by either Ghosal or the shipowners, given that the district court treated them as valid documents. We can then reach the question of whether the procedural and evidentiary rulings by the district court operated to prejudice the ability of petitioner to substantiate her allegations of forgery and fraud and thereby deprived her of due process.
 
 
 23
 A. The Controlling Law--Contract and Maritime Law
 
 
 24
 The events leading to this appeal have cut across the boundaries of two nations, the United States and India, and two states within the United States, Louisiana and Pennsylvania. It is therefore imperative that we first focus on the governing law.[8]
 
 
 25
 The initial step in any choice of law analysis involves the characterization of the subject matter of or the issues in the case (e.g., tort or contract) and of the nature of each issue and whether it raises a problem of procedural or substantive law. E. Scoles & P. Hay, Conflict of Laws 50-51 (1984).
 
 
 26
 This appeal involves two different types of documents--a special power of attorney and a release--the validity of which raise interdependent issues of contracts and agency, admiralty and wrongful death. Presumably, because both documents were drafted and executed in India but relate to the settlement of a federal maritime wrongful death and survival claim, the district court did not differentiate between the two and implicitly concluded that federal maritime law controlled the validity of both documents. We disagree. We must separate these issues to determine the law most appropriate to govern the validity of each document. See Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, 731 F.2d 112 (2d Cir.1984); Pearson v. Northwest Airlines, Inc., 309 F.2d 553 (2d Cir.1962) (en banc), cert. denied, 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720 (1963).
 
 
 27
 (i) Determining the Applicable Law--The Validity of the
 
 Special Power of Attorney
 
 28
 Our first inquiry is which state's law is applicable to the special power of attorney.[9] It is settled that the classification and interpretation of conflict of laws concepts and terms are determined in accordance with the law of the forum. Restatement, Conflict of Laws 2d, Sec. 7(2). Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) holds that federal courts must apply the conflict of laws rules prevailing in the states in which they sit. See also Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657 (3d Cir.1980).
 
 
 29
 The petition in question is based entirely upon Mrs. Chatterjee's allegations that her son-in-law, Ghosal, was not authorized to execute the release. The special power of attorney purports to give Ghosal the right to sign the release on Mrs. Chatterjee's behalf, thus the validity of the release and ensuing settlement are predicated on the validity of the special power of attorney. A power of attorney is an instrument in writing whereby one person, as principal, appoints another as his agent and confers the authority to perform certain specified acts or kinds of acts on behalf of the principal. Thus, the legal question before us concerns the relationship between Mrs. Chatterjee and Ghosal, calling into play the substantive law of contracts and principles of agency, as well as questions of fraud and forgery. We must therefore look to the forum's--Pennsylvania's--choice-of-law rules in contract cases.
 
 
 30
 In Melville v. American Home Assurance Co., 584 F.2d 1306, 1311-1313 (3d Cir.1978), this court determined that the "flexible conflicts methodology" combining interest analysis and Restatement Second of Conflicts of Laws contacts theory employed by the Pennsylvania Supreme Court in the tort case of Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964), is to be extended to contracts actions. Thus, under Pennsylvania choice-of-law principles, the place having the most interest in the problem and which is the most intimately concerned with the outcome is the forum whose law should be applied. Griffith, 416 Pa. at 22, 203 A.2d at 805-806.
 
 
 31
 Applying Griffith, we believe that Pennsylvania's choice-of-law rules on the validity of the power of attorney refer us to the law of India. India has a more compelling interest in that the "agent" was from India even though the "principal" now allegedly resides in Bangladesh. Similarly, all contacts to the document are in India. The special power of attorney was "executed" in India and purports to bear the alleged stamp or attestation of Indian judicial officials. If the signature of Mrs. Chatterjee on the power of attorney was forged, the forgery occurred in India. Thus, the validity of the special power of attorney of December 17, 1975 should be determined by Indian law if an actual conflict exists with respect to the potentially applicable foreign rule of law, so as to make the use of the forum's law appropriate.
 
 
 32
 If the foreign law to which the forum's choice-of-law rule refers does not differ from that of the forum on the issue, the issue presents a "false conflict." To properly assess whether an actual conflict exists in this case, we must compare the Indian law controlling the contractual relationship of principal and agent, which derives from English common law, as well as Indian law on fraud and forgery, with the common law of Pennsylvania. Any differences in India's laws and Pennsylvania's laws must have a significant effect on the outcome of the trial in order to present an actual conflict in terms of choice of law. See e.g., Melville, supra.
 
 
 33
 Under both Pennsylvania and Indian law, a principal is generally not liable on account of acts committed by an agent outside of the actual or apparent scope of his authority unless the acts are subsequently ratified by the principal. See Elderton State Bank v. Citizen's Insurance Agency & Mortgage Company, 86 Pa.Super. 85 (1926); Indian Contract Act Sec. 237 (1872). In this regard, principals are not liable in contract for misrepresentations or frauds committed by agents in matters which do not fall within the agent's authority. See Elderton State Bank, supra; Indian Contract Act Sec. 238 (1872). Thus, there is no significant difference between the agency principles of India and Pennsylvania. Under both, Mrs. Chatterjee would not be bound by a release executed by Ghosal if he lacked the requisite authority. Nor would she be liable for Ghosal's alleged forgery or fraud unless she later adopted and ratified his acts.
 
 
 34
 In contrast, as to proof of fraud, differences in the elements of the cause of action in India and Pennsylvania would significantly affect Mrs. Chatterjee's burden of proving that the special power of attorney was forged.[10] A misrepresentation is actionable under Indian law only if it relates to a material fact whereas, in Pennsylvania, materiality is not a requisite to the action if the misrepresentation is knowingly made or involves a non-privileged failure to disclose. The element of scienter is proven in India if one shows either intent or reason to expect that the representations will be acted upon by the person to whom they were made. On the other hand, in Pennsylvania, mere false information can satisfy the scienter component where a duty to know is imposed. Additionally, Indian law speaks in terms of "action" while Pennsylvania requires "justifiable reliance" on the part of the person being defrauded.
 
 
 35
 We find, therefore that a conflict exists between Pennsylvania and Indian law as they pertain to the elements of fraud. When the forum's choice-of-law rule refers to the law of another jurisdiction and an actual conflict is presented, a court is to apply the foreign law to the extent that it deals with the substance of the case, i.e. it affects the outcome of the litigation. For this reason, we conclude that the district court erred in failing to apply the substantive law of India in order to determine whether the special power of attorney was valid.
 
 
 36
 (ii) Determining the Applicable Law--the Validity of the Release
 
 
 37
 Shifting our focus to the shipowners' relationship to Ghosal and Mrs. Chatterjee, we find that the district court did not err in concluding that federal maritime law governs the validity of the release. It is well-established that a release is the giving up or the abandoning of a claim or right to the person against whom the claim exists or the right is to be enforced or exercised and the release in this matter is a contract to abandon a maritime death claim under federal law.
 
 
 38
 The maritime disaster giving rise to the limitation of liability proceedings occurred in the waters of the Delaware River at Marcus Hook, Pennsylvania. The decedent was a citizen of India and a crewmember of the S.S. CORINTHOS. Claims for his wrongful death, which occurred in the territorial waters of Pennsylvania, were asserted under federal maritime law. Moragne v. States Marine Lines, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). The release was "executed" in India, but in connection with the limitation of liability proceedings pending in the United States District Court for the Eastern District of Pennsylvania. It relates entirely to the "settlement" of a federal maritime wrongful death and survival claim over which the federal court has jurisdiction. See North Pacific Steamship Co. v. Hall Brothers Railway & Shipbuilding Co., 249 U.S. 119, 39 S.Ct. 221, 63 L.Ed. 510 (1919) (contract test of maritime subject matter).
 
 
 39
 The enforceability or validity of such settlement agreements is determined by federal law where the substantive rights and liabilities of the parties derive from federal law. Mid-South Towing Co. v. Har-Win, Inc., 733 F.2d 386 (5th Cir.1984).[11] The law to be applied in this case is federal, since the rationale behind the court's admiralty jurisdiction is the interest in dealing with all the major concerns of the shipping industry as one body of law. See G. Gilmore & C. Black, The Law of Admiralty 29 (2d ed. 1975).
 
 
 40
 Therefore, the district court correctly decided that the validity of the release of December 17, 1975 is to be scrutinized under general federal maritime law.
 
 
 41
 Since general federal maritime law applies, our query then becomes whether the district court was also correct in holding that Garrett v. Moore-McCormack Co., 317 U.S. 239, 248, 63 S.Ct. 246, 252, 87 L.Ed. 239 (1942), is the controlling legal standard or whether we must look to some other body of general federal maritime law. In Garrett, the Supreme Court held that a release executed by a seaman is subject to "careful scrutiny" and that one who sets up a seaman's release has the burden of showing that the release was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights. The question before this court is whether the contractual relationship at issue here is analogous to the relationship of the seaman and the shipowner so as to bring it within the purview of admiralty's wardship doctrine and to impose upon the shipowners the burden of proving the validity of the release, subject to the careful scrutiny called for in Garrett.[12]
 
 
 42
 In the earlier appeal of this matter, this court indicated in a footnote that
 
 
 43
 This release was not signed by the crewmember but by one purportedly representing the crewmember's surviving family. It has been held that the strict scrutiny applied to settlements executed by crewmembers, see Garrett v. Moore-McCormack Co., 317 U.S. 239, 248, 63 S.Ct. 246, 252, 87 L.Ed. 239 (1942), extends to settlements made by their relatives. Lewis v. S.S. Baune, 534 F.2d 1115, 1123 (5th Cir.1976). The QUEENY owners contest the applicability of the strict standard favoring crewmembers.
 
 
 44
 In re Bankers Trust Co., 636 F.2d 37, 39 n. 1 (3d Cir.1980). The shipowners pointed to a Second Circuit decision, Lampsis Navigation Ltd. v. Ortiz de Cortes, 694 F.2d 934 (2d Cir.1982), decided after the district court's November 29, 1982 ruling in this matter.
 
 
 45
 In Lampsis, the Second Circuit held that the release of a wrongful death claim by a seaman's widow would not be as closely scrutinized as a release executed by a seaman. As in Garrett, certain "historical factors" were cited as providing a basis for justifying special treatment of seamen as wards of the Admiralty court, including "their alleged propensity toward rashness and credulity ... their nomadic nature and the perils they encounter at sea." Noting also the "particularly authoritarian relationship of shipowners and their representatives to seamen," the Second Circuit reasoned that these protections are personal and arise from the sailor's own peculiar status. Thus, "none of the factors [which warrant treating seamen as wards of admiralty courts] apply to relatives of seamen who are members of the 'land-based community' with ready access to the advice of friends and the guidance of counsel." Lampsis, 694 F.2d at 936. The shipowners urged this court to adopt the view of the Second Circuit. (Appellee's Brief at 6, n. 8). See also, Capotorto v. Compania Sud Americana de Vapores, 541 F.2d 985 (2d Cir.1976).
 
 
 46
 The earlier appeal of this matter was before this court in 1980 and while this issue was not decided, this court did refer in dictum to the applicability of the strict standard and cited Lewis v. S.S. Baune, 534 F.2d 1115, 1123 (5th Cir.1976), which adopts the contrary view that an admiralty court's careful scrutiny of settlement agreements executed by seamen under Garrett is extended to settlements made by relatives of seamen.
 
 
 47
 As a matter of policy, we follow the course of the Lewis court and conclude that the rationale of Garrett applies to members of a seaman's family who are "landbased." Although the surviving family members were not aboard the ship, it is the impact on the seaman, which occurred on navigable waters, that has caused loss and injury to them. At issue here is the release of a wrongful death claim, the purpose of which is to compensate the surviving family members who might be expected to receive support and assistance from the deceased seaman had he lived. Furthermore, we are dealing with the release of a survival action which permits the cause of action which the victim owned at the time of death to survive and be carried on. If we were to conclude that Garrett did not extend to this situation, we would be sanctioning the anomalous result that the wife and child of a seaman disabled by the shipowner's negligence would benefit from the wardship concept if the seaman had executed a release, while the widow and child of a seaman killed aboard ship, induced to release claims through overreaching on the part of the shipowners, would have the burden of proving the invalidity of the release.
 
 
 48
 We believe that survivors of deceased seamen can often be in weak bargaining positions and, in circumstances such as these, are in need of the admiralty court's protection. We also note that the survivors are often persons from far away lands, in poor position to protect themselves. We believe that the survivors of the deceased seaman, Pratik Chatterjee, seeking the protection of the wardship doctrine, have already been recognized by the shipowners as being entitled to whatever is owed Pratik Chatterjee and they should be permitted to stand in his shoes and be cloaked with the protection of Garrett's careful scrutiny. The survivors of deceased seamen are no less susceptible to overreaching, coercion and deception than the seamen themselves, the special wards of the court. Thus, for the sake of the seamen, this court holds that Garrett should control in this type of situation. This shifts the burden of proof onto the shipowner to show that the release was valid.
 
 
 49
 Thus, we must next determine whether the shipowners sustained the heavy burden of proving that the Chatterjee settlement and release was in fact "executed freely, without deception or coercion, and that it was made ... with full understanding of ... rights." Garrett, 317 U.S. at 248, 63 S.Ct. at 252. "If there was fraud ..., the settlement had no binding effect as to [Mrs. Chatterjee], and she is at liberty to assert ... a death claim in the limitation of liability action." Chatterjee v. Due, 511 F.Supp. 183, 187 (E.D.Pa.1981) (emphasis added).[13]
 
 B. The Burden of Proof
 
 50
 The district court determined that "[t]he only testimony presented to th[e] court was that a power of attorney was executed by the petitioner to her son-in-law who in turn executed a release after having been fully informed of its contents". The district court concluded that there was "not a scintilla of evidence before this court of any infirmity in the execution of the release. " In re Bankers Trust Co., 551 F.Supp. at 611 (emphasis added). The district court implicitly treated both documents as valid but made no express finding of fact to that effect.
 
 
 51
 The shipowners argue that the district court correctly decided that there was no evidence of fraud or overreaching on their part.[14] They further claim that the release is valid as to them whether or not there is evidence that it was procured through the fraudulent acts of Ghosal and/or the law firm of Due and Dodson. In substance, the shipowners contend that because they were not parties to the fraud, if any, the release is valid and thus would preclude the one beneficiary protected under the law--the mother of the deceased seaman--from asserting her claim. We reject that argument.
 
 
 52
 Even if we were to conclude that the shipowners did not directly contribute to any fraud which may have been perpetrated to obtain the release, we do not agree that the release is nonetheless valid because the fraud or forgery, if any, was committed by other actors in this scenario.
 
 
 53
 The shipowners were not without remedies. They could have litigated the case and if there was an adverse verdict, the funds could have been deposited with the Clerk of the District Court for the Eastern District of Pennsylvania. Alternatively, they could have settled the case contingent upon approval by the United States District Court for the Eastern District of Pennsylvania, where the litigation was pending. Where we are faced with the choice of denying this mother her rights because of a release allegedly tainted by fraud, or of requiring the shipowners to bear the risk of loss after having failed to get approval of the settlement from the United States District Court, we find that the shipowners must bear the risk rather than the mother. To do otherwise would be to abdicate the traditional role of the admiralty court to protect the ward--the seaman--and at his death, to protect his family.
 
 
 54
 Thus, if there is evidence that Anil Ghosal was not in fact authorized to represent Mrs. Chatterjee because the signature on the special power of attorney was forged or obtained fraudulently, then it stands to reason that the release was executed with deception. If the fraud of Ghosal, as opposed to the shipowners, procured the forged signature on the power of attorney, the factual question then becomes whether the forgery has been ratified by Mrs. Chatterjee.
 
 
 55
 The resolution of these factual questions as to Ghosal's lack of authority, forgery, fraud, and ratification on the part of Mrs. Chatterjee directly pertains to the district court's treatment of petitioner's motion to admit into evidence the record of the Calcutta Commission, conducted in relation to her malpractice action or, in the alternative, to invoke a second commission to take further testimony which could shed light on her factual allegations of fraud. According to petitioner, not only are the factual findings of the district court clearly erroneous but they have absolutely no foundation in the record because the procedures adopted by the district court, in refusing her proffered evidence, denied her due process and thereby resulted in a miscarriage of justice. With this background, we now turn to Prava Chatterjee's constitutional claim.
 
 C. Due Process
 
 56
 The fifth amendment commands the federal government: "no person shall ... be deprived of life, liberty, or property without due process of law...." Due process guarantees that there is a fair decision-making process before official action is taken which directly impairs a person's life, liberty or property, and, where necessary to prevent a miscarriage of justice, an appellant may urge, as ground for reversal, a theory which was not presented in the trial court. Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); Patterson v. Cuyler, 729 F.2d 925, 929 (3 Cir.1984). Mrs. Chatterjee asserts such a miscarriage of justice.
 
 
 57
 Specifically, Prava Chatterjee contends that she was denied due process under the fifth amendment "by the Order of October 14, 1982 denying use at trial of [the record] of the Commission, where the order was not received until after trial, and at the trial the court directed petitioner's counsel to read from the Commission testimony, and had earlier denied petitioner's request for international judicial assistance and taken no action on her motion for protective order." (Appellant's Brief at 2a). It is her position that there was enough evidence to substantiate her allegations of fraud in the previous Commission transcript, and if not, then the district court deprived her of the opportunity to obtain the necessary factual evidence by precluding the invocation of a new commission.
 
 
 58
 The constitutional sufficiency of procedures provided in any situation varies with the circumstances. In evaluating the procedures in any case, we must consider the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government. Marroquin-Manriquez v. Immigration and Naturalization Service, 699 F.2d 129, 134 (3d Cir.1983).
 
 
 59
 With these principles in mind, this court must examine the procedural and evidentiary rulings below. We find that even if the trial court did not abuse its discretion insofar as the admissibility of the former Commission testimony, it did so with respect to the denial of the new commission. These rulings together effectively blocked all procedural access for Mrs. Chatterjee to put her case before the court, created a procedural void, and thereby deprived her of a fair trial.
 
 
 60
 (i) Admissibility of Former Commission Testimony
 
 
 61
 If a witness is unavailable, a written transcript of that witness' previous testimony may be received as evidence in a case upon compliance with requirements which are designed to guarantee an adequate opportunity of cross-examination. Fed.R.Evid. 804(b)(1). As to the exclusion of the transcripts of the depositions from the Calcutta Commission, the district court ruled that Mrs. Chatterjee was not "unavailable" and that the shipowners did not have a "reasonable opportunity" to cross-examine her at the Calcutta Commission.[15] We agree.
 
 
 62
 Rule 801 defines hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed.R.Evid. Rule 801. Mrs. Chatterjee's counsel alleged that she had no knowledge that any proceedings were brought on her behalf, she did not learn of her son's death until October or November of 1978, and that she lived in Bangladesh between January 31, 1975 and February 1977 and thus could not have signed the power of attorney of December 17, 1975 authorizing Ghosal to settle. However, without the benefit of any depositions or testimony of Mrs. Chatterjee, these factual assertions contained in Mrs. Chatterjee's petition are hearsay.
 
 
 63
 The district court determined that Mrs. Chatterjee was not "unavailable" as defined by Rule 804 of the Federal Rules of Evidence[16] so that her prior testimony was not an exception under Rule 804 to the hearsay rule.[17] Her attorney alleged that she was unable to be present because of, inter alia, physical infirmity, which does fall within the definition of unavailability in Rule 804. But the district court determined that "counsel has never met with and has never spoken to the petitioner," 551 F.Supp. at 610, and there were no affidavits or other information supporting the assertion of medical disability.
 
 
 64
 Mrs. Chatterjee does not expressly challenge the district court's ruling that she is not "unavailable" under Rule 804 and that many of the allegations made by her attorney which directly bear on the validity of the settlement are hearsay and not in evidence. In re Bankers Trust, 551 F.Supp. at 610. In view of the fact that Mrs. Chatterjee was able to swear out a detailed affidavit, see App. at 205a-211a, in the earlier appeal, No. 80-1338, on October 30, 1979, a similar affidavit could be required to establish unavailability. We could not find in the record any evidence, other than counsel's allegations, to establish the unavailability required for invocation of Rule 804's exceptions. We conclude that Prava Chatterjee has not established the prerequisite of unavailability.
 
 
 65
 Even assuming arguendo that Mrs. Chatterjee is unavailable, more important is the requirement that "the party against whom the testimony is now offered, or ... a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Fed.R.Evid. 804(b)(1).
 
 
 66
 We believe, as an alternative ground, that the district court properly refused to admit the transcript of the previous Commission because the shipowners, the present opponents, did not have an adequate motive for testing on cross-examination the credibility of the testimony offered. The shipowners were originally named as defendants in the malpractice suit but were not represented at the taking of the depositions. The shipowners' counsel, the Krusen firm, were defendants in the malpractice suit but we agree with the district court's conclusion that they did not have a similar motive to develop the testimony by direct, cross or redirect examination. We find that the district court did not abuse its discretion in so ruling.[18]
 
 
 67
 The petitioner also claims that the district court disregarded its own order and at times relied on the information gathered through the Calcutta Commission and at times it did not. She argues that prior to October 14, 1982, the district court relied on portions of the Commission transcript, and yet subsequently entered an order denying the use of the testimony at trial but then during the midst of the October 18 trial, requested that counsel read portions of Mrs. Chatterjee's Commission testimony. In short, she alleges procedural arbitrariness, but we are not convinced that petitioner was unduly prejudiced.
 
 
 68
 From our reading of the record, petitioner's counsel sought to introduce into evidence the Commission testimony after the denial of the motion to use the Commission testimony. The district court requested that only Mrs. Chatterjee's cross-examination testimony be read in order to clarify whether "she refused to answer any questions on cross-examination" at the direction of counsel. (Tr. at 6-7). Therefore, even if counsel for petitioner was unaware that the motion for use of said record had been denied, the trial court nonetheless permitted the use of her testimony as requested. Any inconsistency therefore cut in favor of petitioner.
 
 
 69
 Furthermore, the district court had sustained the shipowners' objections to the introduction of the transcript and after requesting that petitioner's counsel read one portion of the record, the district court concluded that it was not helpful and determined that the entire transcript should not be admitted into evidence. This was within the discretion of the trial court and we are not persuaded by petitioner's contention that this rose to the level of a due process violation.
 
 
 70
 (ii) Invocation of New Commission
 
 
 71
 We do believe, however, that the district court's failure to authorize a new commission denied Mrs. Chatterjee the opportunity to substantiate her factual allegations and precluded the district court from having an adequate record from which to make a judgment as to whether Mrs. Chatterjee had or had not signed the special power of attorney, whether her signature was forged, how the alleged forgery was procured and by whom, and whether she ratified the release.[19]
 
 
 72
 In pertinent part, Fed.R.Civ.P. 28(b) states:
 
 
 73
 A commission or a letter rogatory shall be issued on application and notice and on terms that are just and appropriate. It is not requisite to the issuance of a commission or a letter rogatory that the taking of the deposition in any other manner is impracticable or inconvenient; and both a commission and a letter rogatory may be issued in proper cases.
 
 
 74
 (emphasis added). This court stated recently in Marroquin-Manriquez:
 
 
 75
 To find [an abuse of discretion] it is usually necessary to conclude that there has been an interference with a 'substantial right' ... or that the ... ruling is 'seen to be a gross abuse of discretion resulting in fundamental unfairness in the trial of the case.'
 
 
 76
 699 F.2d at 134 (emphasis added).
 
 
 77
 While we acknowledge that a trial court's evidentiary and procedural rulings are generally to be accorded "the narrow review reserved for discretionary decisions based on first-hand observations," United States v. Criden, 648 F.2d 814, 817 (3d Cir.1981),[20] and that such review is confined to determining if that discretion has been abused, the terms of this rule appear to give trial courts limited discretion to deny applications for the issuance of a commission. Prior to the 1963 amendment, Rule 28(b) said: "A commission or letters rogatory shall be issued only when necessary or convenient, on application and notice, and on such terms and with such directions as are just and appropriate." Fed.R.Civ.P. 28(b). (emphasis added). The amendment deleted the words "only when necessary or convenient" from that sentence. Although the Advisory Committee Note does not explain this change, it seems clear that the discretion trial courts formerly had in deciding whether to issue a commission or letters rogatory has been circumscribed. Although we do not dispute that it may be proper to refuse the issuance of a commission or letters rogatory, there are cases in which courts have indicated that there must be some "good reason" justifying the denial of this particular type of judicial assistance. See, e.g., Zassenhaus v. Evening Star Newspaper Co., 404 F.2d 1361, 1364 (D.C.Cir.1968) (per curiam); Leasco Data Processing Equipment Corp. v. Maxwell, 63 F.R.D. 94, 96-97 (1973).
 
 
 78
 Although we decline to hold that a trial court must expressly set forth a "good reason" for denying an application for a commission, when district judges fail to state any reason, the presumption is less in their favor. The district court did not articulate any reason for denying the motion to invoke a new commission, although it did so with respect to denying the use of the former Commission testimony. The district court denied petitioner's Request for International Judicial Assistance on the ground that depositions had already been taken in India, see infra at 880, but offered no similar explanation as to the motion for Invocation of a Commission in India. Nor can we perceive a reason--good or otherwise--for refusing to issue a new commission in this case, particularly in light of the fact that United States District Judge Giles appointed the Commission whose former testimony had been excluded by the present district judge. Fed.R.Civ.P. 26(c) allows the court to protect parties from annoyance, embarrassment, oppression or undue burden and expense but there is no indication on this record that such was the case. This is not a case where the foreign country, India, permits depositions only on written interrogatories. Cf. Oscar Gruss & Son v. Lumbermens Mutual Casualty Co., 41 F.R.D. 279, 282 (S.D.N.Y.1966) (denial of motion for issuance of letters rogatory where laws of Switzerland limited examination to written interrogatories.) Cross-examination took place at the Calcutta deposition, therefore, we may assume this would also be the case in a future deposition in India.
 
 
 79
 (iii) Fundamental Fairness
 
 
 80
 While many procedural and evidentiary errors do not automatically give rise to due process violations, in our view, the errors here constituted a gross abuse of discretion which affected the fundamental fairness of the proceedings below.
 
 
 81
 Due process mandates that a judicial proceeding give all parties an opportunity to be heard on the critical and decisive allegations which go to the core of the parties' claim or defense and to present evidence on the contested facts. See Jackson v. DeSoto Parish School Board, 585 F.2d 726, 730 (5th Cir.1978); Thompson v. Madison County Board of Education, 476 F.2d 676, 678 (5th Cir.1973). The validity of the release and the special power of attorney upon which it is predicated are critical and decisive issues of petitioner's claim. At virtually every stage of the proceedings, the district court's rulings inhibited Mrs. Chatterjee's ability to substantiate her allegations of fraud and forgery. The court's procedural rulings placed Mrs. Chatterjee in the proverbial Catch-22. She had a property interest at stake and in order to protect that interest she sought procedures to attempt to prove that the release was fraudulently executed. We believe that she was erroneously deprived of this interest by virtue of the district court's rulings. In this regard, petitioner was denied the procedural fairness that the fifth amendment assures to all persons who, whether intentionally or by vicissitudes of fate, find their lives, liberty or property in the hands of the courts of the United States.
 
 III.
 
 82
 Accordingly, we will vacate the order of the district court denying the petition to set aside the settlement and release and we will remand this matter to the district court with directions to invoke a commission for the purpose of taking testimony in India, pursuant to rule 28(b) of the federal rules of civil procedure.[21]
 
 
 
 [1]
 The answer and claim listed the "survivors and claimants of the late Pratik Chatterjee" as follows:
 Mrs. Prava Chatterjee (lawful mother) [decedent's lawful father predeceased him], Mrs. Arati Ghosal (lawful sister), Sri Prasanta Chatterjee (lawful brother), and Sri Probir Chatterjee (lawful brother).
 Appendix (Earlier appeal, No. 80-1338) at 10a-19a.
 This court, by Order dated January 26, 1983 dispensed with an appendix in this appeal. An abbreviated appendix was filed. We are now, however, asked to consider the documents in No. 80-1338, an earlier appeal from a denial of the petition to vacate and set aside the release and settlement. In re Complaint of Banker's Trust Co., 636 F.2d 37 (3d Cir.1980), as part of the present appeal. Transcript of Oral Argument at 6. Appendix ("App.") will refer to the appendix filed in the earlier appeal, No. 80-1338. Abbreviated Appendix ("Abb.App.") will refer to the appendix filed by the appellant in this appeal.
 
 
 [2]
 The shipowners allege that their counsel alerted counsel for claimants that "in the event one person is selected as the representative or attorney in fact, a suitable Power of Attorney must be prepared and executed, with translation of that document." (Appellee's Brief at 3). The shipowners further allege that their counsel required that the settlement documents be approved in India before an Indian judge
 Two documents were purportedly signed by Mrs. Chatterjee--an undated "power of attorney" and a "special power of attorney." The special power of attorney in issue is in English and a duplicate is in Mrs. Chatterjee's own language. It appears to bear the signatures of the appropriate family members--Mrs. Prava Chatterjee, Mrs. Arati Ghosal, Sri Prasanta Chatterjee and Sri Probir Chatterjee. App. at 169a-177a. It also appears to have been attested to by Mr. Abdul Ghaffer, an Indian Commissioner and Justice of the Peace.
 
 
 [3]
 Petitioner claims that there never was a settlement of her claim due to the fraudulent acts of her son-in-law
 
 
 [4]
 The executed release appears to be attested to by C.D. Basishita, Additional District & Sessions Judge, Delhi and provides in pertinent part:
 A.R. Ghosal has signed after understanding the contents of this document which have been read over and explained to him in his own language, after admitting the contents as correct ... A.R. Ghosal is Special Attorney of Prava Chatterjee, Prasanta Chatterjee, and Probir Chatterjee.
 A similar attestation was made by Bhishma K. Agnihotri on the same document, and the signature of K.K. Agnihotri appears as a witness of Ghosal's signature.
 App. at 15a.
 
 
 [5]
 The shipowners were named as defendants but damages were sought only against the defendant-lawyers
 
 
 [6]
 Petitioner had filed a Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence in Civil or Commercial Matters on October 6, 1982. The district court denied the motion on the ground that
 Bankers Trust Company, Monsanto Company and Keystone Shipping Co. (collectively "Keystone") had filed a notice for the oral deposition of the petitioner. Petitioner's counsel claims that petitioner is impecunious, and in ill health, and is therefore unable to appear for a deposition in the United States. Depositions of the petitioner have been already taken in India in accordance with the order of ... this court in another case involving the petitioner. We shall, therefore, deny this motion.
 Abb.App. at 1a-6a. (emphasis added).
 The district court also denied the Supplemental Motion of Petitioner for Appointment of Disciplinary Counsel. Petitioner's Exceptions to Further Accounting by Due and Dodson. Motion by the Petitioner for Appointment of a Conservator and the Motion by Petitioner for Adjudication of Civil Contempt and Other Relief.
 Id.
 
 
 [7]
 On January 14, 1983, the district court denied the motion for reconsideration and appointed the accounting firm of Touche, Ross "to audit the books and records of the Due and Dodson law firm as to all matters pertaining to their representation of the claim of Pratik Kumar Chatterjee, deceased". App. at 20a-21a. No subsequent notice of appeal was filed after the denial of the motion
 In an unpublished per curiam opinion of the court on jurisdiction, this court held that the petitioner's December 28, 1982 notice of appeal from the November 29th order is a permissive appeal under 28 U.S.C. Sec. 1292(a)(3). We concluded that where the motion is labeled as Rule 60(b) even though concerning matters more appropriate to a Rule 59 motion, and where treating it as a Rule 59 motion would "destroy" appellate jurisdiction, it should be treated as it is labeled. Mrs. Chatterjee's motion for reconsideration thus did not operate to toll the time for filing the notice of appeal. This court held that the notice of appeal was proper and timely. In re Bankers Trust Co. (3d Cir.1984). 729 F.2d 1445.
 
 
 [8]
 In view of our holding, we engage in this discussion for the guidance of the district court on remand
 
 
 [9]
 The petitioner contends that the validity of the special power of attorney is to be governed by principles of federal maritime law. Although Mrs. Chatterjee's claim is maritime, see infra, and there is federal jurisdiction under the admiralty clause, we believe that we must choose the law applicable to the special power of attorney by resort to land-based choice-of-law principles because the issue involved is sufficiently "localized that the need for uniformity in federal admiralty law is eclipsed by the need for uniformity in application of the state law." See Wilburn Boat Co. v. Fireman's Fund Insurance Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). Thus, even though federal law governs the cause of action, state law, including state conflicts law, applies to this aspect of the case
 
 
 [10]
 The Indian Legislature has defined fraud in Section 17 of the Indian Contract Act. The essential requirements of fraud are:
 1) a false representation of material facts;
 2) knowledge of the falsity of the representation by the persons making them;
 3) ignorance of the falsity on the part of the person to whom the representations are made;
 4) intent or at least reason to expect that the representations will be acted upon by the person to whom they were made;
 5) action by such a person to his detriment.
 Indian Contract Act Sec. 17 (1827) (emphasis added); see Evans v. Edmonds, (1853) 13 C.B. 777; K. Narasimhachar, Basu's Fraud and Mistake in Law (Civil & Criminal) 6 (2d ed. 1965).
 In contrast, the elements of fraud in Pennsylvania are:
 1) a false representation of an existing fact, Fidurski v. Hammill, 328 Pa. 1, 195 A. 3 (1937);
 2) (a) if a misrepresentation is innocently made, then it is actionable only if it relates to a matter material to the transaction involved;
 (b) if the misrepresentation is knowingly made or involves a non-privileged failure to disclose, materiality is not a requisite to the action, DeJoseph v. Zambelli, 392 Pa. 24, 139 A.2d 644, affirming 11 Pa.D & C.2d 447 (1958);
 3) scienter
 (a) actual knowledge of the truth or falsity of the representation.
 (b) reckless ignorance of the falsity of the matter, or
 (c) mere false information where a duty to know is imposed on a person by reason of special circumstances. 16 P.L.E., Fraud Secs. 7, 4;
 4) reliance, which must be justifiable, so that common prudence or diligence could not have ascertained the truth; and
 5) damage to the person relying thereon.
 Shane v. Hoffmann, 227 Pa.Super. 176, 182, 324 A.2d 532, 536 (1974) (emphasis added).
 The elements of fraud are relevant to Mrs. Chatterjee's allegations of forgery because under Section 463 of the Indian Penal Code, forgery is the making of "any false document or a part of a document, with intent to ... enter into any express, or implied contract, or with intent to commit fraud or that fraud may be committed ..." Under Pennsylvania law, a person is guilty of forgery if, with intent to defraud ... the actor ... executes ... any writing so that it purports to be the act of another who did not authorize the act ..." 18 Pa.C.S. Sec. 4101. In this respect, the offense of forgery is not significantly different.
 
 
 [11]
 Arguably, Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) applies because the settlement and release of the claim in issue related to a tort in admiralty--wrongful death. We believe, however, that it is sufficient to say that under either characterization of the release, the applicable law is the same--general federal maritime law. Therefore, we need not elaborate on the Lauritzen balancing approach
 
 
 [12]
 Originally, the shipowners and the respondents, Due and Dodson, maintained that Garrett was inapplicable. The respondents argued below that Garrett's "scrutiny of seamen's releases is deemed necessary because of the perceived disparity between seamen and their employers." (Respondent's Brief at 6) (emphasis in original). They assert that "the contractual relationship at issue ... is not the one between a seaman and the shipowner," id. at 7, thus questioning the applicability of Garrett in this case
 
 
 [13]
 Although we ultimately hold that the factual record below is incomplete as a matter of law, we briefly review the factual findings of the trial court to assist the district court on remand
 
 
 [14]
 Mrs. Chatterjee still asserts on this appeal that counsel for the shipowners should have suspected the authority and credentials of Ghosal, and that given their conduct, there was overreaching on the part of the shipowners. She argues that counsel for the shipowners was present when Ghosal was paid $15,000 in cash, which is now unaccounted for; counsel for the shipowners knew that Ghosal provided no written bill or receipt and nonetheless wired for the settlement funds to be sent; the shipowners settled without a personal representative under Fed.R.Civ.P. 25(a); and the settlement was made without approval of the settlement terms by a district court. (Appellant's Brief at 17-24). We will not address these contentions in view of our holding
 
 
 [15]
 The district court reviewed the testimony and concluded that this record was of no assistance on the issue of Mrs. Chatterjee's credibility. The district judge viewed the case as one involving an underlying family quarrel and therefore he wanted the opportunity to view the demeanor of Mrs. Chatterjee and the other family members. Thus, even though the depositions contain certain factual allegations, which, if accepted as true, would establish that Ghosal forged the powers of attorney and fraudulently represented that he acted on behalf of the family members, the district court determined that this testimony was inadmissible
 
 
 [16]
 Rule 804(a) provides that unavailability includes situations where the declarant
 (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or
 (2) persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or
 (3) testifies to a lack of memory of the subject matter of his statement; or
 (4) is unable to be present or testify at the hearing because of death or then existing physical or mental illness or infirmity; or
 (5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance ... by process or other reasonable means.
 
 
 [17]
 Once Mrs. Chatterjee's deposition is taken with opposing counsel present, any hearsay problem is cured and any discussion of "unavailability" rendered irrelevant. The Advisory Committee Notes accompanying Fed.R.Evid. 802 state explicitly that Fed.R.Civ.P. 32 constitutes an independent exception to the hearsay rule
 Rule 32(a)(3)(B) provides, in pertinent part, that "the deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds ... that the witness is at a greater distance than 100 miles from the place of the trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition." Fed.R.Civ.P. 32(a)(3)(B).
 The exceptions to the requirement of oral testimony at trial appearing in Rule 32 and in the Federal Rules of Evidence are cumulative. Thus, even though a deposition does not fall within the exceptions to the hearsay rule set forth in Rule 804 of the Federal Rules of Evidence, it is admissible if it falls within the provisions of Rule 32(a)(3). See, 4A. J. Moore, J. Lucas & D. Epstein, Moore's Federal Practice p 32.05 (2d ed. 1984), at 32-35.
 
 
 [18]
 We believe that even though the district court may have been correct in ruling that Mrs. Chatterjee's former Commission testimony did not fall into the exception of Rule 804, we are not persuaded that the former testimony did not fall within the provisions of Rule 32(a)(3). Cf. Richmond v. Brooks, 227 F.2d 490 (2d Cir.1955). Moreover, should a new commission issue, any deposition taken of Mrs. Chatterjee taken would similarly fall within the purview of Rule 32(a)(3). Rule 32(a)(3)(B) permits Mrs. Chatterjee to introduce her own deposition as evidence at trial so long as she resides more than 100 miles from the place of trial or is out of the United States. Thus, her deposition testimony would be admissible even if she fails to satisfy Rule 804's prerequisites
 
 
 [19]
 Interestingly, this court observed in the earlier appeal of this matter: "[w]e do not believe that a district court would have decided the merits of this disputed claim without holding an evidentiary hearing, particularly in the context of admiralty jurisdiction ..." In re Bankers Trust Co., 636 F.2d at 39 (emphasis added)
 
 
 [20]
 In United States v. Criden, 648 F.2d 814, 817-818 (3d Cir.1981), we observed that
 [p]erhaps the most common category of decisions committed to the discretion of the trial court encompasses those situations where the decision depends on first-hand observation or direct contact with the litigation. Only the trial judge has seen the witness or observed the jury's reaction to evidence. Only the trial judge has supervised the course of litigation through discovery and pretrial, and can evaluate the diligence or procrastination of the attorneys. In those circumstances the trial court has a superior vantage point which an appellate court cannot replicate. The trial court's decision therefore merits a high degree of insulation from appellate revision. Rulings on evidentiary matters, discovery, and procedural issues fall in this category.
 
 
 [21]
 If the witness' credibility is as important as the trial judge seems to believe, it is suggested that counsel may want to consider having the proceedings videotaped. The court takes notice of the prolonged and accelerating tension between certain counsel and the district judge. Under these circumstances, the district judge might wish to consider making a request to his chief judge to have the case reassigned