**J.M.P.H. WETHERELL, an underwriter at Lloyd's London, for himself and certain other underwriters at Lloyd's London subscribing to Policy No. 83 JAN 0754, Excess Insurance Co., Ltd., Unionamerica Insurance Co., Ltd.**

v.

**SENTRY REINSURANCE, INC., Phoenix General Insurance Co., and Cole, Booth, Potter, Inc.**

**No. 85–7061.**

United States District Court, E.D. Pennsylvania.

July 31, 1990.

Wilson, Elser, Moskowitz, Edelman & Dicker, Philadelphia, Pa., for plaintiffs.

Robert R. Reeder, Philadelphia, Pa., for Cole, Booth, Potter, Inc.

Mound, Cotton & Wollan, New York City, for Phoenix Gen. Ins. Co.

## MEMORANDUM

O'NEILL, District Judge.

### I. *Introduction.*

This is a non-jury dispute concerning reinsurance coverage. Plaintiffs are insur-

ance underwriters.[1] Defendant Cole, Booth, Potter, Inc. ("CBP") is a reinsurance intermediary. Defendant Phoenix General Insurance Co. ("Phoenix") is a corporation which provides reinsurance coverage.[2] Plaintiffs, CBP and Phoenix have filed cross-motions for summary judgment.[3] For the reasons that follow, I will grant Phoenix's motion for summary judgment against plaintiffs and CBP, deny CBP's motion for summary judgment against plaintiffs and Phoenix, and deny plaintiffs' motion for summary judgment against CBP and Phoenix.

The central issue is whether Phoenix is liable to plaintiffs under a reinsurance contract with respect to an April 6, 1985 fire loss. In the event Phoenix is not liable under the reinsurance contract, a second issue is whether CBP as plaintiffs' broker is liable to plaintiffs for failing to discharge its duties as broker to plaintiffs.

The parties' cross-motions for summary judgment raise three issues concerning Phoenix's reinsurance coverage: (1) whether Phoenix's reinsurance policy expired pursuant to the terms of Phoenix's certificate; (2) whether Phoenix issued a valid notice of cancellation of its reinsurance coverage; and (3) whether Phoenix's notice of cancellation, if effective, was sufficient to cancel Phoenix's coverage under the terms and conditions of either Phoenix's certificate or the terms of the London slip.[4] Phoenix contends that for any one or more of these reasons, it is not liable for the April 5, 1985 loss. Plaintiffs and CBP contend that Phoenix is liable for the loss because its coverage did not expire and it did not cancel its coverage in accordance with the requirements of Pennsylvania law. The parties do not dispute that these issues can be decided solely on the basis of the stipulated facts.[5] In the alternative, CBP argues that if Phoenix issued an effective notice of cancellation plaintiffs, through their agent, Fenchurch Group Brokers Ltd.[6] ("Fenchurch"),[7] a Lloyd's insurance

1. Plaintiffs in this action are Unionamerica Insurance Company, Ltd., Insurance Company of Ireland, and the Poland Syndicate (Syndicate No. 109). Apparently, these are the "certain other underwriters at Lloyd's London subscribing to Policy No. 83 JAN 0754" referred to in the caption. Plaintiffs have filed their cross-motions for summary judgment collectively, and for the purpose of this memorandum, I will refer to them collectively as "plaintiffs".

2. The claims among plaintiff J.M.H.P. Wetherell and defendants Sentry Reinsurance, Inc. and Cole, Booth, Potter, Inc. have been settled.

3. The parties originally filed their cross-motions in 1986 and 1987. On September 26, 1988, I denied the motions without prejudice. I requested that the parties enter into a stipulation of uncontested facts and subsequently refile their motions. On April 17, 1990, the parties filed their stipulation of uncontested facts. On April 23, 1990, Phoenix and CBP refiled their motions for summary judgments. Their motions and briefs in support thereof were identical to those originally filed in 1986 and 1987 except that they referred to the stipulation of uncontested facts. On May 10, 1990, the plaintiffs filed their cross-motion for summary judgment. Plaintiffs' motion does not rely solely upon the stipulation of uncontested facts, but instead refers to a voluminous set of exhibits which plaintiffs filed with their motion. Some, but not all of plaintiffs exhibits are contained in the stipulation of uncontested facts. After reviewing plaintiffs' submissions, I find that I need not rely on them in reaching my conclusions.

4. Phoenix also argues that it canceled its coverage for nonpayment of premium prior to the loss. I express no opinion on this issue. See discussion, infra, at n. 42.

5. No party contends that there are issues of material fact concerning Phoenix's coverage. The parties' cross-motions on this aspect of the case assert that they are entitled to summary judgment solely on the law and the stipulated facts.

6. In their response to CBP's Request for Admissions plaintiffs state that Fenchurch "was the reinsurance broker acting on behalf of [plaintiffs] in connection with the placement of reinsurance with Phoenix General Insurance Co." See Wetherell's Responses to CBP's Request for Admissions, Request No. 1.

7. Plaintiffs joined Fenchurch as a defendant in this action. By Order dated June 26, 1989, I dismissed plaintiffs' Complaint against Fenchurch for lack of subject matter jurisdiction. I held that plaintiffs and Fenchurch were both aliens and this Court lacks jurisdiction over an action between aliens. See Order of June 29, 1989, at 2.

Subsequent to the June 26, 1989 Order, CBP joined Fenchurch as a third-party defendant. By Order dated February 27, 1990, I dismissed Fenchurch on the grounds that the CBP's third-

broker, were advised of such cancellation over ten months prior to the loss. CBP contends that it is not liable to the plaintiffs as such notice was sufficient. Plaintiffs contend that there are issues of material fact regarding CBP's liability to plaintiffs.

## II. *Undisputed Facts.*

The parties have stipulated to the following facts:

Plaintiffs are underwriters at Lloyd's London or foreign insurance companies having their principal place of business in London, England. Stipulation of Uncontested Facts ("Stip.") 1. CBP is the successor in interest to Booth, Potter, Seal & Co. ("BPS"). BPS was a reinsurance intermediary. CBP is a Pennsylvania Corporation with its principal place of business in New Jersey. Stip. 2. Phoenix is a Connecticut corporation with its principal place of business in Connecticut. Stip. 3.

In October of 1982, Fenchurch requested BPS to solicit reinsurance on a $25 million property insurance [8] policy covering Reynolds Metals, Inc., Lloyd's Policy 81JAN0754 ("First Lloyd's Policy"). The First Lloyd's Policy, as issued, had a policy period of January 1, 1981 to January 1, 1984. Stip. 4. Subsequently, the First Lloyd's Policy was canceled and rewritten as Policy No. 83JAN0754 ("Second Lloyd's Policy") with a policy period of May 11, 1983 to January 1, 1986. Stip. 5. *See* Exhibit A to Plaintiffs' First Amended Complaint.

At all times relevant to this action, BPS had no direct communications with any of the plaintiffs regarding reinsurance on either the First Lloyd's Policy or the Second Lloyd's Policy, but rather directed all of its communications through Fenchurch. Stip. 6. At all times relevant to this matter, Phoenix had no direct communications with Fenchurch or any of the plaintiffs regarding reinsurance on either the First Lloyd's Policy or the Second Lloyd's Policy. Phoenix directed all of its communications through BPS. Stip. 7. At all times relevant to this matter, Fenchurch communicated with and provided information to and on behalf of the plaintiffs regarding reinsurance of the First Lloyd's Policy and the Second Lloyd's Policy. Stip. 8.

By telex of October 14, 1982, Fenchurch requested that BPS solicit reinsurance on the First Lloyd's Policy in the $5,000,000 excess of $5,000,000 layer. Stip. 9, Ex. 1. By telex of October 15, 1982, BPS requested Phoenix to provide reinsurance on the First Lloyd's Policy. Stip. 10, Ex. 2. BPS's telex of October 15, 1982 stated in pertinent part: "Conditions: 90 day cancellation clause to any anniversary date." *Id.*

By telex of October 15, 1982, Frank Lo-Piccolo [9] of Phoenix advised Chuck Link [10] of BPS:

> Reply to your 10/15 telex for caption, we have reserved market for your office on this account. Please advise price of layer above ten million.

Stip. 11, Ex. 3. By telex of October 15, 1982, Link of BPS advised Fenchurch:

> Phoenix Re show an interest but would like to know what the pricing was on layer 15 million in excess of 10 million.

Stip. 12, Ex. 4.

On October 18, 1982, LoPiccolo of Phoenix sent a letter to BPS requesting a schedule of locations and values, audit adjustment of the premium required at anniversa-

---

party Complaint did not allege adequately a right of indemnification or the existence of a joint tortfeasor relationship and therefore failed to state a claim upon which relief could be granted. *See* Order of February 27, 1990, at 7 & n. 3.

**8.** The Stipulation states "insured policy". *See* Stip. 4.

**9.** LoPiccolo is "a vice-president of Phoenix Re Corporation, property-casualty reinsurance manager for defendant Phoenix General Insurance Company." Affidavit of Frank LoPiccolo,

¶ 1. LoPiccolo was intimately involved in Phoenix's participation in the reinsurance of both Lloyd's policies. *Id.,* at ¶¶ 3–22.

**10.** Chuck Link "was formerly a vice president for Cole, Booth, Potter, Inc. and Booth, Potter, Seal & Company, Inc." Affidavit of Charles R. Link, ¶ 1. Link "was the broker who principally handled, on behalf of BPS, the placement of the reinsurance with Phoenix General Insurance Company on [the First Lloyd's Policy] and the rewrite of that policy, [the Second Lloyd's Policy]." *Id.,* at 2.

ry and original closing for the period 1/1/83—1/1/84. Stip. 13, Ex. 5.

By telex of October 19, 1982, Link of BPS advised Fenchurch:

Reynolds Metals

Layer 5 million excess of 5 million

10% Phoenix Re

10% NRG (NYIE)

Subject to 120 days cancellation and not at anniversary

These are authorizations and advise immediately if binding.

Stip. 14, Ex. 6. By telex of November 5, 1983, Fenchurch advised Link of BPS:

Have just realized did not confirm that we wish to take up your lines effective 1st January 1983. Please bind effective 1/1/83.

Stip. 15, Ex. 7.

By telex of November 8, 1982, Link of BPS advised Fenchurch that it had an authorization for reinsurance from Phoenix and requested instructions to bind coverage. Stip. 16, Ex. 8. When no instructions regarding binding were received, BPS sent two additional telexes to Fenchurch, dated December 9, 1982 and December 29, 1982, requesting instructions from Fenchurch regarding binding coverage with Phoenix. Stip. 17–19, Ex. 9-11. By telex of December 29, 1982, Fenchurch advised Link of BPS:

Apologies for delay, but confirm we able to use your lines of NRG and Phoenix so please bind effective 1st January, 1983. Trust this is in order.

Stip. 20, Ex. 12.

By telex of December 30, 1982, Link of BPS advised LoPiccolo of Phoenix:

Reynolds Metals files should reveal 10 percent authorization which we want to bind effective 1/1/83. Confirm agreement and assign certificate number please.

Stip. 21, Ex. 13. By telex of December 30, 1982, Phoenix responded to BPS's December 30, 1983 telex (Exhibit 13) stating:

Reply to your 12/30 telex for captioned, we have assigned Certificate No. PO4–AA0093.

Stip. 22, Ex. 14. By telex of January 6, 1983, Link of BPS advised Fenchurch:

Reynolds Metals. Your December 29, 1982 noted and bound effective January 1, 1983. Awaiting closings and money.

Stip. 23, Ex. 15.

By telex of March 15, 1983, Fenchurch advised Link of BPS that the underwriters on the First Lloyd's Policy were issuing a new three year policy based on revised terms and that the new policy would run until January 1, 1986, but that the effective date of the new policy had not been established. Stip. 24, Ex. 16.

On March 17, 1983, LoPiccolo of Phoenix sent another copy of his letter of October 18, 1982 (Exhibit 5) to Link at BPS. That letter requested a schedule of locations and values, audit adjustment of the premium required at anniversary and original closing for the period 1/1/83 through 1/1/84. Stip. 25, Ex. 5.

On March 17, 1983, Phoenix received from BPS a copy of Fenchurch's March 15, 1983 telex to BPS, along with a document giving the following instructions:

Please sign the attached for your approval and return two copies as soon as possible.

Stip. 26, Ex. 18. By telex of April 12, 1983, BPS advised Phoenix:

Further to telex dated March 16. Please return signed copy advising your approval.

Stip. 27, Ex. 19.

By telex of April 13, 1983, Fenchurch advised Link of BPS of the terms for the cancel and rewrite of the Lloyd's First Policy. Stip. 28, Ex. 20. That telex advised that the policy period would be "Date T.B.A. [to be announced] pro rata to 1st January, 1984 and twenty four months thereafter and/or as original." *Id.* The April 13, 1983 telex also stated "Cancellation clause as original plus 30 days." *Id.* By telex of April 19, 1983, Fenchurch advised Link of BPS of, among other things, the deductibles with respect to the cancel and rewrite of the First Lloyd's Policy. Stip. 30, Ex. 22.

By telex of April 22, 1983, Link of BPS advised LoPiccolo of Phoenix of the terms of Lloyd's Policy No. 83JAN0754 ("Second Lloyd's Policy"), the cancel and rewrite of the First Lloyd's Policy. Stip. 31, Ex. 23. In particular, BPS's telex of April 22, 1983 advised Phoenix:

> Period: Date T.B.A. [to be announced] pro rata to January 1, 1984 and 24 months thereafter and/or as original ...
>
> * * *
>
> Conditions: 90 days cancellation clause to any anniversary date.

Stip. 31, Ex. 23.

By telex of April 22, 1983. Link of BPS advised Fenchurch:

> Also waiting for agreement to new proposal layer 5 excess of 5 from Phoenix Re and NRG N.Y.I.E. and their agreement to possible sign down from 10% to 7.5%.

Stip. 32, Ex. 24.

By telex of April 25, 1983, Fenchurch advised Link of BPS:

> Thanks your telex 22nd and 25th. Please hold all your authorizations pending our advices.

Stip. 33, Ex. 25.

On May 3, 1983, Link of BPS and LoPiccolo of Phoenix had a telephone conversation. Stip. 34. Link's handwritten notes regarding this conversation appear on his copy of Exhibit 23, the April 22, 1983 telex from Fenchurch to BPS concerning the conditions of the rewrite. Stip. 34, Ex. 23. Link's notes read: "F. Lo Piccolo [sic] agreed by phone. 5–3–83.". Ex. 23. LoPiccolo's handwritten notes regarding the telephone conversation appear on Phoenix's copy of the April 22, 1983 telex. Stip. 34, Ex. 26. LoPiccolo's notes read: "ok by phone. FL". Ex. 26, p. 2.

By telex of May 3, 1983, Fenchurch advised Link of BPS:

> Please hold your authorizations pending our advises. With regard to dollars $5 million in excess of $5 million, please

confirm your markets agreement to our telex March 15. Will await your soonest advises.

Stip. 35, Ex. 27. By telex dated May 3, 1983, Link of BPS advised Fenchurch:

> Reynolds Metals. Your May 3 noted. Hold authorization pending advice to bind risk.
>
> Layer $5 million excess of $5 million, NRG (NYIE) and Phoenix Re both agreed to go along with their 10% interest unless otherwise advised.
>
> Await your binding order.

Stip. 36, Ex. 28.

The First Lloyd's Policy was canceled and rewritten as the Second Lloyd's Policy, which became effective May 11, 1983 through January 1, 1986. Stip. 37.

On June 28, 1983, LoPiccolo of Phoenix sent a letter to Link of BPS which requested the open items Phoenix had previously requested,[11] and stated:

> As of this writing we have not received any of the above items all of which will enable us to issue a closing certificate. Also, we have not received any premium payment which is now long overdue.
>
> In view of the above we must request that these outstanding items be obtained and forwarded on or before August 1, 1983 at which time, if they have not been received, we will have to ask that our reinsurance participation be replaced in one of your other markets.

Stip. 42, Ex. 33.

By telex of June 29, 1983, Anna Kolodziejski of BPS advised LoPiccolo of Phoenix that the term of the reinsurance on the Second Lloyd's Policy was 11 May 1983 pro rata to 1st January 1984 and 24 months thereafter, and requested Phoenix's advises. Stip. 43, Ex. 34.

By telex of June 29, 1983, Fenchurch advised Kolodziejski of BPS:

> Thanks your telex 28th June. Apologies for delay and please bind Phoenix Re's 10% line and NRG's 10% line on layers $5

---

**11.** Exhibit 33, the letter of June 28, 1983, states that Phoenix had requested the open items in correspondence dated October 18, 1982, March 17, 1983, April 18, 1983 and May 18, 1983. The stipulation of uncontested facts includes copies of only two of these requests. *See* Stip. 13, Ex. 5 and Stip. 25, Ex. 5.

million excess of $5 million effective 11th May 1983.

Stip. 44, Ex. 35. By telex of June 30, 1983, Simon Koe and Keith Sheridan of Fenchurch advised Kolodziejski of BPS:

Re Reynolds Metals

Further our telex 29th June and your 29th June. Please confirm your final marketing position on above account effective 11th May 1983: ...

Layer $5,000,000 excess $5,000,000

NRG: 10.000%

Phoenix: 10.000%

As per our telexes 11th May and 29th June please bind your markets on primary and $5,000,000 excess $5,000,000 ...

Stip. 45, Ex. 36.

By telex of July 1, 1983, Kolodziejski of BPS advised LoPiccolo of Phoenix:

Re Reynolds Metals

Please bind your authority of 10% part of $5,000,000 excess of $5,000,000 effective 5/11/83 and confirm by return telex.

Stip. 46, Ex. 37.

By telex of July 1, 1983, Kolodziejski of BPS advised Koe and Sheridan of Fenchurch:

Re Reynolds Metals

All participants are bound as per your telex of 30 June. We are still awaiting markets approval to changes outlined in your telex of 22 June.

Will keep you updated.

Stip. 47, Ex. 38.

By telex of July 6, 1983, Kolodziejski of BPS advised LoPicollo of Phoenix:

Re Reynolds Metals

Please advise your response to my telex of June 29.

Stip. 48, Ex. 39.

By telex of August 4, 1983, LoPiccolo of Phoenix advised Link of BPS:

Please refer to previous correspondence dated October 18, 1982, March 17, 1983, April 18, 1983, May 18, 1983 and June 29, 1983, wherein we requested an updated schedule of locations and values, January 1, 1983 adjustment premium to reflect updated schedule of locations and values and closing papers.

As of this writing, we have still not received any of the above items, nor have we received premium payment.

In view of the above, we must request that our reinsurance participation be replaced in one of your other markets on or before September 15, 1983, at which time our reinsurance participation will terminate.

Stip. 51, Ex. 42.

By telex of August 5, 1983, Link of Phoenix advised Fenchurch of the exact contents of Phoenix's August 4, 1983 telex (Exhibit 42).[12] Stip. 52, Ex. 43.

By telex of August 8, 1983, Fenchurch advised BPS:

Your telex 5th noted and would advised [sic] that all appropriate premiums currently being prepared for your office on urgent basis. In fact believe some may have already been forwarded but unable completely check this today. In any event did not know from our file that Phoenix Re required copy of schedule. We currently obtaining same for producer and will forward very soonest. Please discuss with Phoenix Re and endeavor to get them to stay on risk as this is most important. Reviewing all aspects our end and will advise further tomorrow.

Stip. 53, Ex. 44. Phoenix received a copy of Fenchurch's August 8, 1983 telex (Exhibit 44)[13] on August 11, 1983. Stip. 53, Ex. 45.

By telex of August 22, 1983, Marie Trocone of BPS advised Fenchurch:

Account Reynolds Metals

We received copy slips for layers $5 million excess of $5 million and $15 million excess of $10 million. However, we did not receive copy slips for $25 million primary. Please forward.

---

**12.** Stipulation 52 incorrectly refers to Phoenix's August 4, 1983 telex to Link of BPS as Exhibit 43. It is Exhibit 42.

**13.** Stipulation 53 incorrectly refers to Fenchurch's August 8, 1983 telex to BPS as Exhibit 43. It is Exhibit 44.

Stip. 54, Ex. 46. By telex of August 31, 1983, Trocone of BPS advised Sheridan of Fenchurch:

> Account Reynolds Metals Corp.
>
> Please forward closings for above account effective January 1, 1983. Reinsurer is pressing.

Stip. 55, Ex. 47. By telex of September 13, 1983, Trocone of BPS reiterated this request. Stip. 57, Ex. 48. By telex of September 14, 1983, Fenchurch advised Trocone of BPS:

> Further your telex 13th can advise that closings will be forwarded your office today.

Stip. 58, Ex. 49.

On September 1, 1983, Phoenix received from BPS a document known as a "reinsurance slip policy" or "London slip policy" which set forth the terms for reinsurance of the Second Lloyd's policy. Stip. 56, Ex. 41. The terms of coverage as set forth in the London slip policy were: (1) period of coverage: May 11, 1983 to January 1, 1986; and (2) conditions: 90 days notice to any anniversary.[14] Ex. 41.

By letter of November 29, 1983, LoPiccolo of Phoenix advised Link of BPS:

> Please refer to the numerous correspondence sent to your office as respects the captioned matter wherein we requested a schedule of Values and Locations, anniversary adjustment of premium to the 1/1/83–84 policy term, and copy of the original Closings (Contract Wording).
>
> Because we have not received the requested information we had sent notice of cancellation on this account which was to take effect September 15, 1983. We subsequently received advises from your office that your client was in fact obtaining and forwarding the requested information in the near future. We were also advised and agreed to the addition of Canadian locations to this contract for which we are still awaiting information. As of this date we have still not been favored with any of the above-requested items and must therefore ask that you mark your records and advise your client that this contract will terminate as of January 1, 1984.
>
> I regret the action that we must take, but I am sure you can understand that we have been more than patient in this matter.

Stip. 66, Ex. 57.

After receipt of Phoenix's November 29, 1983 letter, Kolodziejski of BPS had a telephone conversation with LoPiccolo of Phoenix in which LoPiccolo agreed to rescind Phoenix's purported notice of cancellation. Deposition of Anna Kolodziejski, pp. 257–265.[15] Kolodziejski's notes of that conversation which appear on Exhibit 57 state: "Talked to Frank LoPiccolo 12/5, he has agreed to rescind cancellation as long as he receives closings this week. AMK 12/5/83." Kolodziejski then advised Fenchurch by telex of December 5, 1983 that Phoenix had agreed to rescind its notice of cancellation. Stip. 67, Ex. 58.

By telex of December 9, 1983, Kolodziejski of BPS advised LoPiccolo of Phoenix of amendments to the Second Lloyd's Policy (83JAN0754) which the original underwriters had agreed to and requested:

> Please review all above and confirm noted, ASAP.

Stip. 69, Ex. 60.

By telex of December 22, 1983, Fenchurch advised BPS of agreements reached by underwriters on the Second Lloyd's Policy (83JAN0754). Stip. 71, Ex. 62. On December 26, 1983, Phoenix received a letter from BPS dated December 23, 1983 which stated:

> We are enclosing dailies for the above risk. Please complete and send to us at

---

**14.** In its Memorandum in support of motion for summary judgment, CBP asserts that the London slip set forth a cancellation term of 120 days cancellation notice to any anniversary. Exhibit 41 to the stipulated facts states "90 Days Cancellation Clause to any anniversary date." *See* Exhibit 41, at p. 5.

**15.** Phoenix does not dispute that LoPiccolo agreed to rescind the November 29, 1983 purported notice of cancellation. Nor does Phoenix dispute that its telex of January 12, 1984 rescinded this notice of cancellation. *See* Stip. 81, Ex. 72.

your earliest convenience, so that we may process this account.

Stip. 72, Ex. 63 and 64.

On December 20, 1983, Phoenix issued a certificate, No. PO4–AA0093, with respect to reinsurance of Lloyd's on the Reynolds Metals Policy. Stip. 73, Ex. 65. BPS received Phoenix's certificate on December 27, 1983. Stip. 74.

By telex of January 3, 1984, Kolodziejski of BPS advised Phoenix:

Re Reynolds Metals

It is urgent that I receive reply to my telex of 12/9 ASAP.

Stip. 75, Ex. 66.

By telex of January 3, 1984, BPS advised Phoenix of the underwriters' agreement to changes in the Second Lloyd's Policy (83JAN0754) as set forth in Fenchurch's December 22, 1983 telex. Stip. 76, Ex. 67.

By telex of January 4, 1984, Kolodziejski of BPS advised Simon Koe of Fenchurch:

Re Reynolds Metals

Just to clarify situation on original placement effective January 1, 1983 to May 11, 1983, signed lines are as follows:

American Centennial 5%
NRG Syndicate 7.6167%
North River 3.8084%

All above markets have agreed to signed lines, however Phoenix Re absolutely refuses to sign down. Please advise how we are to proceed.

Stip. 77, Ex. 68.

By telex of January 6, 1984, LoPiccolo of Phoenix advised Kolodziejski of BPS:

Reply to your January 3 telex for captioned we are no longer at risk on account as of January 1, 1984.

Stip. 78, Ex. 69.

By telex of January 9, 1984, Kolodziejski of BPS advised LoPiccolo of Phoenix:

Further to our telephone conference please rescind your cancellation notice, closings were forwarded to your office 12/23/83, we will reissue copy for your file. Also our client has agreed to sign your line in full at 10%. Please refer to my telex of 1/3/84 as respects builders risk and advise of your agreements.

Stip. 79, Ex. 70.

By telex of January 9, 1984, Simon Koe and John Plummer of Fenchurch advised Kolodziejski of BPS as follows:

Re Reynolds Metals

Thanks for your telex dated 6th January. To clarify recent correspondence outlined below are your markets that are participating on above account from 1st January 1984.

\*      \*      \*      \*      \*      \*

Layer $5 million excess $5 million

| | | |
|---|---|---|
| NRG Syndicate | Written 10.0000% | line |
| Phoenix Re | Written 10.0000% | line |
| American Centennial | Written 5.0000% | line |

\*      \*      \*      \*      \*      \*

Please urgently advise whether [sic] which of the above markets if any are under notice of cancellation on above account.

Stip. 80, Ex. 71.

By telex of January 12, 1984, LoPiccolo of Phoenix advised Kolodziejski of BPS:

The following information is needed to complete our file on the above account:
1. Schedule of locations and values for 1983–84 and for 1984–85 term.
2. Account expires on 3/1/84. Your renewal advises would be appreciated.
3. Audit adjustment of premium required for:
   Anniversary (1983–84 term)
   (1984–85 term)
4. Closing required:
   Original closing (1983–86)
   Endorsement closing (9/14/83)
   (9/28/83)
5. Other: We have rescinded notice of cancellation effective 1/1/84. Unless the above items are all completed, we will not be in a position to renew coverage.

Stip. 81, Ex. 72.

On January 16, 1984, BPS received from Phoenix an endorsement no. 1 to Certificate No. PO4–AA0093 which provided that: "This Certificate is amended to expire 3/1/84." Stip. 82, Ex. 73.

On February 7, 1984, Phoenix issued an invoice to BPS which stated in part:

Effective Date of Reinsurance—1/1/84

\* \* \* \* \* \*

Gross Premium due—$3,011.50

Stip. 83, Ex. 74.

By telex of March 6, 1984, LoPiccolo of Phoenix advised BPS:

Further to our telex of 1/12/84 and not having received the open items, we have marked our records that coverage has expired March 1, 1984.

Stip. 84, Exhibit 75.

By telex of May 22, 1984, Kolodziejski of BPS advised LoPiccolo of Phoenix:

Further to your receipt of cancellation endorsement we received the following from our client:

Would advise that policy is anniversary date only cancellation. Please therefore renegotiate and also confirm their underwriting that notice cannot be tendered until January 1, 1985. Please advise.

Stip. 85, Ex. 76.

By telex of May 23, 1984, LoPiccolo of Phoenix advised Kolodziejski of BPS:

Reply to your 5/22 telex for captioned please convey the following to cedent:

1. Per our 1/12 telex—

Our certificate of reinsurance was renewed for the period 1/1/84 to 3/1/84

2. Cedent has advised that his contract is anniversary date only cancellation. That is nice except . . .

   1. We never received a copy of the contract, therefore we do not know of this provision. This is one of the reasons we canceled because of non receipt of information.

   2. Our certificate provided for 90 day cancellation notice. It was issued for a one year term and then extended for 3 months to expire 3/1/84.

We have not received after repeated requests

1. Schedule of locations and values for 1983–84 and 1984 to 1985 term.

2. Audit adjustments for 1983–84 and 1984–856 term.

3. Closings of any kind being copy of wordings.

4. Payment of premiums.

The cedent has been most uncooperative in providing information. Phoenix is not at risk any longer.

Please convey the above to your client.

Stip. 86, Ex. 77.

By telex of May 24, 1984, Kolodziejski of BPS advised Fenchurch:

After reviewing file, we found that Phoenix Re will not remain on account past 1st March, 1984. We advised that this is not possible as cancellation is anniversary date only. The following was received in reply: . . .

Kolodziejski of BPS transmitted the full text of Phoenix's May 23, 1984 telex (Exhibit 77) to Fenchurch with her telex. Stip. 87, Ex. 78.

By telex of May 25, 1984, Fenchurch advised Kolodziejski of BPS:

In receipt of your telex dated 24th May and would advise as follows:

(1) Telex mentions Phoenix Re withdrawing from above account effective 1st March 1984. This is first advice that Phoenix intended to cancel effective 1st March. Only advise with regard to Phoenix cancellation effective 1st January 1984 was your confirmation telex dated 5th December 1983 that Phoenix had agreed to rescind their cancellation. In addition, as requested by Phoenix their 10% written line was amended to sign 10% of whole effective 1st January 1984 as advised our telex dated February 15.

(2) Presume therefore that market you referred to is Pine Top (Republic West) with 1.0000% written line on quota share primarily $25 million and would respond as follows: . . .

\* \* \* \* \* \*

Please confirm above and clarify whether market is Phoenix Re or Pine Top.

Stip. 88, Ex. 79.

By telex of June 8, 1984, Kolodziejski of BPS advised Fenchurch:

Have had numerous discussions with Phoenix Re and Pine Top Ins. Co. regard-

ing anniversary cancellation. They both feel their certificates supersede anniversary cancellation provision and will not honor the London slip. Please advise. Stip. 89, Ex. 80.

By telex of June 11, 1984, Fenchurch advised Kolodziejski of BPS:

In response to your telex dated 8th June can advise have re-reviewed all correspondence between Fenchurch and BPS on market placement and servicing on new policy of above account (83 JAN 0754) which incepted 11 May 1983. Would reiterate that all policy terms and conditions were advised to your office by telex and documentation (see telex dated 25th May 1984 for dates and info). Therefore with regard to specific question of N.O.C. clause being 90 days from anniversary date only on original must emphasis [sic] that onus firmly with your office to advise your markets. Further if, as you now advise, certain markets requested that their cert's override original London slip for new policy 83 JAN 0754 effective 11th May 1983 then onus on your office to advise our office of the fact.

Must presume from your correspondence that the above was not done. Therefore in light of above can not accept any liability for Pine Tops 1.0000 pcnt written line ... or Phoenix re's 10.0000 pcnt written line.... Would ask you to renegotiate the above markets to persuade them to remain on the risk until 1st Jan 1985 when we shall replace them if required and if we are advised in accordance with policy conditions.

\* \* \* \* \* \*

Stip. 90, Ex. 81.

By telex of June 13, 1984, Kolodziejski advised Koe of Fenchurch:

Please forward original policy ASAP as this might be helpful in resolving cancellation problem.

Stip. 91, Ex. 82. By telex of June 11, 1984, Fenchurch advised Kolodziejski of BPS that it was forwarding a copy of the policy wording. Stip. 92, Ex. 83. By letter of June 15, 1984, Koe of Fenchurch forwarded a copy of the policy wording for Policy 83JAN0754 to Kolodziejski of BPS. Stip. 93, Ex. 84.

By telex of June 19, 1984, Fenchurch advised Kolodziejski of BPS:

Further our telex dated 13th June. Can advise copy of policy wording sent to your office on 15th June. Once received await your word on market's confirmation of cancellation clause outlined therein.

Stip. 94, Ex. 85. On June 21, 1984, BPS sent a copy of the policy wording on Policy 83JAN0754 to Phoenix. Stip. 97, Ex. 88 and 89.

By letter of August 15, 1984, Kate Trucano of Phoenix advised Kolodziejski of BPS:

Per our telecon on August 15, 1984, please see attached copies of you endorsements and advise our correct premium for the term 1/1/83 to 3/1/84. As of 3/1/84, we are not on this account. Also your accounting department has overpaid us in a total amount of $7,375.91 net. We have been paid correctly for the term 1/1/83 to 3/1/84 which is $14,229.33.

Stip. 98, Ex. 90.

On April 6, 1985, Reynolds Metals, the insured under Policy 83JAN0754 suffered a fire loss at Listerhill, Alabama. Stip. 99. Phoenix declined coverage for that loss. *See* Stip. 100–108 and 110. In the course of declining coverage, LoPiccolo of Phoenix maintained that Phoenix had canceled its reinsurance coverage on the Second Lloyd's Policy. Stip. 107, Ex. 98, and Stip. 110, Ex. 101.

III. *Standard For Summary Judgment.*

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(e) provides that when a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but

the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

■ The party moving for summary judgment has the burden of demonstrating that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party sustains this burden, the nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.,* at 248, 106 S.Ct. at 2510. All doubts must be resolved in favor of the nonmoving party. *Id.,* at 255, 106 S.Ct. at 2513. In addition, "the existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against the moving party.'" *Ely v. Hall's Motor Transit Co.,* 590 F.2d 62, 66 (3d Cir.1978) (quoting *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972)).[16]

### IV. *Discussion.*

#### A. Choice of Law.

■ Plaintiffs, CBP and Phoenix dispute whether New York or Pennsylvania law governs the breach of contract aspects of this action.[17] As subject matter jurisdiction in this case is based on diversity of citizenship, I apply the conflict of laws rules of Pennsylvania. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania's conflicts law combines both grouping of contacts and interest analysis. *Mel-*

*ville v. American Home Assur. Co.,* 584 F.2d 1306, 1311 (3d Cir.1978).

The Court of Appeals for the Third Circuit has held that Pennsylvania's "flexible conflicts methodology" applies to contract actions. *In Re Complaint of Bankers Trust Co.,* 752 F.2d 874, 881–82 (3d Cir. 1984); *Reading Metal Craft Co. v. Hopf Drive Assocs.,* 694 F.Supp. 98, 104 (E.D.Pa. 1988). Under this approach, "the place having the most interest in the problem and which is the most intimately concerned with the outcome is the forum whose law should be applied." *Bankers Trust,* 752 F.2d at 882. *See also Coons v. Lawlor,* 804 F.2d 28, 30 (3d Cir.1986); *Blakesley v. Wolford,* 789 F.2d 236, 239 (3d Cir.1986).

In this case, however, I need not determine which state has the greater interest in having its law apply because the laws of New York and Pennsylvania governing the issues involved in this case do not conflict. "The first question to be posed when choice of law appears to be at issue is whether a choice must really be made, i.e., whether different sovereigns whose laws may arguably be applied to the case have laws which conflict in relevant ways. *See Cipolla v. Shaposka,* 439 Pa. 563, 267 A.2d 854 (1970)." *Coons,* 804 F.2d at 30, (quoting *Melville v. American Home Assurance Co.,* 443 F.Supp. 1064, 1080 (E.D.Pa.1977), *rev'd on other grounds,* 584 F.2d 1306 (3d Cir.1978)). If the laws that might be applied to the case do not differ on the relevant issues, there is a false conflict. *Coons,* 804 F.2d at 30. *See also Bankers Trust,* 752 F.2d at 882; *Cavers, The Choice of Law Process,* at 89 (1965) ("the conflict may be found false because both laws are the same or would yield the same result.").

The parties assert that with respect to one crucial issue in this case, namely whether Phoenix's purported notice of cancellation was effective to terminate its obligations to the plaintiffs, the laws of New

---

**16.** *See also Bracey v. Keene Corp., et al.,* C.A. No. 86–6830, slip op. at 3, 1989 WL 156380 (E.D.Pa. December 18, 1989).

**17.** In addition to the breach of contract issues, this action also involves issues concerning CBP's

alleged breach of its duties as broker acting on behalf of plaintiffs. *See* discussion, *infra,* at 1176–1177. Plaintiffs and CBP, the only parties interested in that aspect of the case, agree than Pennsylvania law governs the determination of whether CBP breached any duty to plaintiffs.

York and Pennsylvania conflict.[18] *Compare Lesk v. London & Lancashire Indemn. Co.,* 286 N.Y. 443, 36 N.E.2d 655 (1941) and *New York Central Employees Albany District Credit Union No. 5119 v. Commercial Credit Co.,* 13 Misc.2d 874, 178 N.Y.S.2d 977 (Albany Cty.Ct.1958) with *Hanna v. Reliance Ins. Co.,* 402 Pa. 205, 166 A.2d 877 (1961) (per curiam).

In *Lesk* and *New York Central,* the Courts of New York embraced the generally accepted rule [19] that a notice of cancellation which purports to cancel an insurance contract at a time earlier than that permitted under the cancellation provisions of the contract will operate to cancel the contract at the expiration of the permitted time. *Lesk,* 36 N.E.2d at 656–57; *New York Central,* 178 N.Y.S.2d at 980. CBP and plaintiffs contend that in *Hanna* the Pennsylvania Supreme Court adopted a more stringent rule which requires a notice of cancellation to comply strictly with the requirements of the policy's cancellation clause. *See Hanna,* 166 A.2d at 879. For the reasons set forth in full below,[20] I have concluded that *Hanna* is consistent therefore with the law of New York. Because there is no conflict, I therefore apply Pennsylvania law.[21]

### B. Phoenix's Motion for Summary Judgment.

Phoenix raises four arguments in support of its motion for summary judgment against CBP and the plaintiffs. First, Phoenix claims that its coverage expired as of March 1, 1984, and therefore that it was "off the risk" at the time of the loss. Second, Phoenix argues that it canceled its coverage as of March 1, 1984, and was off the risk at that time. Third, Phoenix argues that it canceled its coverage as of January 1, 1985, and therefore was off the risk. Fourth, Phoenix asserts that prior to the loss it canceled its coverage for non-payment of premium. CBP and plaintiffs contest each of these assertions.

For the reasons that follow, I conclude (1) that Phoenix's coverage did not expire on March 1, 1984, (2) that Phoenix did not cancel its coverage effective March 1, 1984, but (3) that Phoenix did cancel its coverage effective no later than January 1, 1985. I do not reach the issue concerning Phoenix's purported cancellation for non-payment of premium. Therefore, I will enter summary judgment in favor of Phoenix and against plaintiffs and CBP.

### i. Phoenix's Coverage did not Expire on March 1, 1984.

Phoenix contends that its coverage expired in accordance with its certificate on March 1, 1984. Phoenix claims that it issued its certificate for the period January 1, 1983 through January 1, 1984 [22] and later extended its coverage through an endorse-

---

**18.** As I have previously noted, *see* discussion, *supra,* at 1159, the parties have raised three issues concerning Phoenix's reinsurance of the plaintiffs in this case. They are: (1) whether Phoenix's reinsurance policy expired pursuant to the terms of Phoenix's certificate; (2) whether Phoenix issued a valid notice of cancellation of its reinsurance coverage; and (3) whether Phoenix's notice of cancellation, if effective, was sufficient to cancel Phoenix's coverage under the terms and conditions of either Phoenix's certificate or the terms of the London slip. Apart from the third issue, the parties do not dispute that the legal principles applicable to each of these issues are the same under New York and Pennsylvania law. *See* discussion, *infra,* notes 25 and 30.

**19.** *See* discussion, *infra,* at 1173.

**20.** *See* discussion, *infra,* at 1175–1176.

**21.** In an action for breach of contract relevant contacts include the places of negotiation, contracting and performance, the location of the subject matter of the contract, and the citizenship of the parties. *Reading Metal,* 694 F.Supp. at 104, (citing *Day & Zimmermann, Inc. v. Exportadora Salcedo de Elaboradoros de Cacao, S.A.,* 549 F.Supp. 383, 387 (E.D.Pa.1982)). *See also·Schoenkopf v. Brown & Williamson Tobacco Corp.,* 483 F.Supp. 1185, 1195 (E.D.Pa.), *aff'd* 637 F.2d 205 (3d Cir.1980).

Assuming that the laws of New York and Pennsylvania were in conflict, under Pennsylvania's choice of laws principles, I see no compelling reason to apply Pennsylvania law particularly as neither plaintiffs nor Phoenix nor the insured were located in Pennsylvania and the loss did not occur in Pennsylvania. CBP is the only party to this action located in Pennsylvania.

**22.** *See* Stip. 22, Ex. 14.

ment to the original certificate until March 1, 1984.[23] Therefore, Phoenix contends that its coverage expired under the endorsement to its certificate on March 1, 1984. I decline to accept this construction of the transactions in question.

■ This issue turns on basic principles of contract construction. Insurance contracts are tested and governed by the principles applicable to contracts in general. *Zayc v. John Hancock Mut. Life Ins. Co.*, 338 Pa. 426, 13 A.2d 34, 38 (1940). To create an insurance contract, "there must be an offer and acceptance which results in a meeting of the minds". *Moser Manufacturing Co. v. Donegal & Conoy Mut. Fire Ins. Co.*, 362 Pa. 110, 66 A.2d 581, 582 (1949).[24] "It is well settled that agreement or mutual assent between parties is essential for the formation of a contract." *Arnold Pontiac–GMC, Inc. v. General Motors Corp.*, 786 F.2d 564, 571 (3d Cir.1986) (citing *Restatement (Second) of Contracts* § 17 (1981)). *See also Martha Co. v. Nationwide Mut. Ins. Co.*, 473 F.Supp. 1029, 1040 (M.D.Pa.1979) ("Consent by both parties to the specific terms of the contract is essential to the formation of such an agreement."). A contract of insurance, like other contracts, cannot be changed or modified without the consent of both parties. *Murray v. John Hancock Mut. Life Ins. Co.*, 165 Pa.Super. 514, 69 A.2d 182, 183 (1949). *See also Martha Co.*, 473 F.Supp. at 1040; *Young v. United States Fid. & Guar. Co.*, 299 Pa.Super. 237, 445 A.2d 542, 544, n. 3 (1982), *appeal dism'd.*, 500 Pa. 233, 455 A.2d 635 (1983). A change or modification of a contract must be supported by consideration. *See Wilcox v. Regester*, 417 Pa. 475, 207 A.2d 817, 821 (1965); *Corson v. Corson's Inc.*, 290 Pa.Super. 528, 434 A.2d 1269, 1271 (1981).[25] These principles apply to reinsurance contracts. *See National*

*Surety Corp. v. Brunswick Corp.*, 391 F.2d 26, 33–34 (5th Cir.1968) (opinion of Rives and Gewin, JJ.).

■ Phoenix contends that it is not bound by the expiration date of the London slip[26], January 1, 1986, but instead by the term included in its policy certificate and the endorsement to that certificate,[27] March 1, 1984. However, an insurer or reinsurer may not modify the terms of a contract by issuing a certificate which conflicts with the terms of the agreed upon contract:

> Ordinarily, where the issuance of a binder[28] is followed by the issuance and delivery of a formal written policy, the terms of the binder are to be found in the policy. The insurer cannot avoid liability under the terms of the binder by issuing a policy at variance with the binder. Thus where the parties agree in writing on the specific terms of the coverage, the insurer cannot avoid liability by issuing a policy which does not cover the risk contemplated by the binder, especially after loss has occurred and liability attaches.

Couch on Insurance 2d (Rev. ed.), § 14:37.

In *Republic Ins. Co. v. French*, 180 F.2d 796 (10th Cir.1950), the Court of Appeals for the Tenth Circuit considered a situation in which an insurer sought to avoid liability based upon a policy which conflicted with the binder. In *French*, the insurer issued an "all risk" policy which provided for $5,000 in coverage for clothing. The insurer then issued a policy limiting coverage for clothing to $250. When the insured suffered a clothing loss of several thousand dollars, the insurer sought to limit its coverage to $250 based on the policy language. In holding in favor of the insured, the Court stated:

> But where, as here, the parties have agreed in writing upon specific terms of

---

**23.** *See* Stip. 82, Ex. 73.

**24.** *See also Triffin v. Thomas,* 316 Pa.Super. 273, 462 A.2d 1346, 1349 (1983); *In Re Packer Avenue Assocs.,* 1 B.R. 286, 289–290 (E.D.Pa.1979).

**25.** These principles regarding the formation and modification of insurance contracts are universally accepted. *See* Couch on Insurance 2d, § 2.12 (Rev. ed.) (collecting cases).

**26.** Stip. 56, Ex. 41.

**27.** Stip. 73, Ex. 65 and Stip. 82, Ex. 73.

**28.** [Footnote by this Court] In this case the binder is the London slip which Phoenix received on September 1, 1982. *See* Stip. 56, Ex. 41.

the coverage, the Company cannot avoid liability by issuing a policy which does not cover the risk contemplated by the binder. Especially after the loss has occurred and liability attached. It cannot promise one contract and fulfill it with another.

\*      \*      \*      \*      \*      \*

Here, the Company was asked to and agreed to write an "all-risk" insurance contract on clothing while away from home to the extent of $5,000.00, and it is no defense to say that it issued another policy after the loss, which by its terms limited liability in any event to $250.00.

*Id.* at 798–99.

■   The undisputed facts demonstrate that Phoenix entered into a contract with the plaintiffs through their broker BPS to extend Phoenix's participation in the reinsurance of the Reynolds risk through January 1, 1986. By telex of April 22, 1983, BPS advised Phoenix of the terms of the Second Lloyd's Policy. Stip. 31, Ex. 23. That telex stated that the period for the Second Lloyd's Policy was to be "... pro rata to January 1, 1984 and 24 months thereafter and/or as original ..." *Id.*

In his affidavit, Frank LoPiccolo of Phoenix states: "On May 3, 1983, I advised Cole by telephone that Phoenix was agreeable to staying on the risk for the Reynolds re-write." LoPiccolo affidavit, ¶ 7. On May 3, 1983, after a telephone discussion with Link at BPS, LoPiccolo noted on his copy of the April 22, 1983 telex "ok by phone. FL". *See* Ex. 26, p. 2. Further, in his deposition, LoPiccolo testified that "ok by phone" meant that he "agreed to the new premium *and the new expiration date.*" LoPiccolo deposition, at 124 (emphasis added). Phoenix has provided no evidence that LoPiccolo or any other Phoenix representa-

tive ever objected to the expiration date of the Second Lloyd's Policy.[29]

Phoenix contends that it notified CBP on a number of occasions that its coverage would expire on March 1, 1984 and that CBP's failure to object to this purported modification demonstrated CBP's consent to the expiration date change. But this argument fails to consider the fact that LoPiccolo agreed to the term of the Second Lloyd's Policy evidenced in the London slip. Phoenix thereby entered into a contract to provide reinsurance coverage through January 1, 1986. Without the consent of plaintiffs through CBP and additional consideration, Phoenix could not unilaterally alter or modify the expiration date. The fact that CBP never objected to the terms of Phoenix's amended certificate is immaterial because the undisputed facts demonstrate that Phoenix was bound by the terms of the London slip.

LoPiccolo's affidavit and deposition testimony establish that Phoenix agreed to the expiration date of the Second Lloyd's Policy. Phoenix could not modify that term unilaterally. I conclude that Phoenix agreed to January 1, 1986 as the expiration date of its reinsurance.

ii.   Phoenix Canceled its Coverage prior to the April 6, 1985 Loss.

a.   *Phoenix's Notice of Cancellation was Sufficient under Pennsylvania Law.*

■   Phoenix contends that if its coverage did not expire on March 1, 1984, it effectively canceled its coverage at the latest as of January 1, 1985. Plaintiffs and CBP contend that Phoenix's purported notice cancellation was not effective under Pennsylvania law. For the reasons that follow, I conclude that Phoenix's notice of

---

**29.** Prior to Phoenix's issuance of the December 20, 1983 certificate, Phoenix received six documents from BPS evidencing that there was a new term extending from May 11, 1983 through January 1, 1986. These documents, which include the London slip, are: (1) Fenchurch's telex of March 15, 1983 which Phoenix date stamped March 17, 1983. *See* Stip. 24 and 26, Ex. 16 and 18; (2) BPS's telex of April 22, 1983

which Phoenix date stamped April 25, 1983. *See* Stip. 31, Ex. 23 and 26; (3) BPS's telex of 6/29/83. *See* Stip. 43, Ex. 34; (4) BPS's telex of 7/1/83 which Phoenix date stamped July 1, 1983. *See* Stip. 46, Ex. 37; (5) the London slip which Phoenix date stamped September 1, 1983. *See* Stip. 56, Ex. 41; and (6) BPS's telex of December 9, 1983. *See* Stip. 69, Ex. 60.

**1172**

cancellation was sufficient under Pennsylvania law.

In *Pomerantz v. Mutual Fire Ins. Co.*, 279 Pa. 497, 124 A. 139 (1924), the Pennsylvania Supreme Court, in considering an insurance contract which required five days notice of cancellation, stated:

> While no particular form of notice is necessary, it must be a positive and unequivocal act of cancellation indicating unmistakably the intention of the company no longer to be bound by the policy five days after the receipt of notice of cancellation. If the notice be equivocal or not indicative of a present cancellation, but a mere intention or desire to cancel in the future, a cancellation will not be effected.

*Id.* 124 A. at 140. *Accord Martha Company*, 473 F.Supp. at 1039 (cancellation notice must be written and contain a positive and unequivocal statement of cancellation stating insurer's intention no longer to be bound after effective cancellation date).[30]

In this case, Phoenix contends that its telex of January 12, 1984 was sufficient notice to cancel Phoenix's coverage. That telex states:

> The following information is needed to complete our file on the above account:

1. Schedule of locations and values for 1983–84 and for 1984–85 term.
2. Account expires on 3/1/84. Your renewal advises would be appreciated.
3. Audit adjustment of premium required for:
   Anniversary (1983–84 term)
   (1984–85 term)
4. Closing required:
   Original closing (1983–86)
   Endorsement closing (9/14/83)
   (9/28/83)
5. Other: We have rescinded notice of cancellation effective 1/1/84. Unless the above items are all completed, we will not be in a position to renew coverage.

Stip. 81, Ex. 72 (emphasis supplied). Plaintiffs and CBP contend that this notice is not a positive and unequivocal act of cancellation and that it therefore did not effect a cancellation of Phoenix's coverage. For the reasons that follow, I disagree.[31]

In *Martha Company, supra,* the insurer sent the insureds a notice of cancellation which was unequivocal on its face in that it stated that because of failure to pay a premium coverage would be terminated effective 12:01 A.M. on June 1, 1976. The reverse of the notice stated that the cancellation would not become effective if the insureds paid the premium prior to the cancellation date listed on the front. The insureds argued that the notice was condi-

---

**30.** New York applies the same principles regarding the sufficiency of a notice of cancellation. *See Silberzweig v. New York Property Ins. Underwriting Assoc.*, 59 A.D.2d 737, 398 N.Y.S.2d 571, 572 (1977).

**31.** Phoenix contends that the January 12, 1984 notice must be viewed in light of the ongoing communications between BPS and Phoenix. On October 18, 1982, Phoenix sent a letter to BPS requesting a schedule of locations and values, audit adjustment of the premium required at anniversary and original closing for the period 1/1/83 through 1/1/84. Stip. 13, Ex. 5. On June 28, 1983, Phoenix sent a letter to BPS which noted that Phoenix had not received the open items and stated that Phoenix would ask that its participation in the reinsurance be placed in another market if Phoenix did not receive the open terms by August 1, 1983. Stip. 42, Ex. 33.

By telex of August 4, 1983, Phoenix advised BPS that because Phoenix had not received the requested items, "we must request that our reinsurance participation be replaced in one of your other markets on or before September 15, 1983,

at which time our reinsurance participation will terminate." Stip. 51, Ex. 42. By letter of November 29, 1983, Phoenix again advised BPS that it had not received the open items and stated: "[we] must therefore ask that you mark your records and advise your client that this contract will terminate as of January 1, 1984. I regret the action that we must take, but I am sure you can understand that we have been more than patient in this matter." Stip. 66, Ex. 57.

Phoenix claims that this ongoing correspondence supports its contention that the January 12, 1984 telex was an effective notice of cancellation. But the fact that Phoenix had attempted to cancel its coverage in the past and subsequently rescinded the cancellation cuts against both positions. The correspondence does establish that BPS was on notice of Phoenix's concerns about the account and that Phoenix was considering cancellation. But the correspondence also demonstrates that Phoenix was reluctant to leave the account. Therefore, I conclude that the inquiry as to the effectiveness of the January 12, 1984 telex turns on the terms of that communication.

tional rather than unequivocal. In finding the notice sufficient, the Court stated:

> ... the Court is not convinced that the conditions on the back of [the insurer's] cancellation notice render the notice conditional rather than unequivocal. The notice is not phrased in the form "If you do not pay your premium this policy will be canceled." Rather, it indicates affirmatively that the insurer has made a decision not to continue coverage but provides the insured with an opportunity to prevent cancellation by prompt action on his part in paying the premium. *It is the view of this Court that the notice sent by [the insurer] was sufficient to indicate to a person of reasonable understanding that his insurance coverage would cease at a certain date.*

*Martha Company,* 473 F.Supp at 1039 (emphasis supplied).

The language of the January 12, 1984 telex is more than sufficient to inform a person of reasonable understanding that Phoenix had canceled its coverage. The telex facially demonstrates that Phoenix intended its coverage to expire as of March 1, 1984. Phoenix would not consider an application by BPS to *renew* its participation unless and until BPS forwarded the open items. The only evidence necessary on this issue is the notice of cancellation. Therefore, I conclude that the January 12, 1984 telex was sufficient to cancel Phoenix's coverage.

I also note that the communications between Phoenix and CBP subsequent to the January 12, 1984 telex should have placed CBP on notice that Phoenix no longer considered itself on the Reynolds account. On March 6, 1984, Phoenix advised BPS that its coverage expired on March 1, 1984. Stip. 84, Ex. 75. On May 23, 1984, Phoenix advised BPS, "Phoenix is not at risk any longer." Stip. 86, Ex. 77. On August 15, 1984, Phoenix advised BPS, "As of 3/1/84, we are not on this account." Stip. 98, Ex. 90. All of these notifications would constitute sufficient notice of cancellation under Pennsylvania law.

For the foregoing reasons, I conclude that Phoenix's notice of cancellation was sufficient to cancel Phoenix's coverage.

### b. *Phoenix's Notice of Cancellation was Effective no later than January 1, 1985.*

Phoenix argues that since its notice of cancellation is sufficient under Pennsylvania law, its coverage was canceled prior to the loss. Under the stipulated facts there are two possible cancellation terms, the cancellation term of Phoenix's certificate [32] (90 days at any time) or the cancellation term of the London slip [33] (120 days at anniversary).[34] I need not determine which of these provisions governs this case because I find that under either term, Phoenix's coverage terminated prior to the loss.

Phoenix's January 12, 1984 cancellation telex stated that Phoenix's coverage would expire on March 1, 1984. CBP and plaintiffs argue that this notice was ineffective under Pennsylvania law because it did not comply strictly with the terms of either the London slip or Phoenix's certificate. Phoenix contends that although the cancellation notice did not state correctly the date of termination of coverage the notice should be given effect as of the expiration of the either 90 days or 120 days at anniversary.

Couch's Treatise on Insurance succinctly states the rule governing notices of cancellation of insurance policies:

> The fact that the notice contains a time limitation which is void because it is less than that required by the policy does not void the notice or make it inoperative. To the contrary, the notice takes effect

---

**32.** Stip. 73, Ex. 65.

**33.** Stip. 56, Ex. 41.

**34.** Plaintiffs and Phoenix's submissions contest at length whether the cancellation terms of the Phoenix certificate or the London slip control in this case. *See* Plaintiffs' Response and memorandum of law, at 41–42; Phoenix's Memoran-

dum of law, at 19–20. However, as CBP's Brief acknowledges, *see* Memorandum in Support of Cole, Booth, Potter's motion for summary judgment, at 17, I need not decide this issue, because under either cancellation term, Phoenix's notice of January 12, 1984 canceled Phoenix's coverage prior to the April 6, 1985 loss. *See* discussion, *infra,* at ——.

as a notice, the insured, however, being entitled to the full period specified by the policy. Thus, the notice is effective, but is to be read as though it stated the proper date which would be allowed by the policy.

Couch on Insurance 2d (Rev. ed.), § 67:169 (collecting cases). The significant weight of authority supports this position. *See Trans–American Ins. Co. v. Wilson,* 262 Ala. 532, 80 So.2d 253 (1955); *Commercial Union Fire Ins. Co. v. King,* 108 Ark. 130, 156 S.W. 445 (1913); *American Glove Co. v. Pennsylvania Fire Ins. Co.,* 15 Cal.App. 77, 113 P. 688 (1910); *Mancillas v. Campbell,* 42 Colo.App. 145, 595 P.2d 267 (1979), *aff'd* 628 P.2d 96 (1981); *Robbins v. Southern General Ins. Co.,* 243 A.2d 686 (D.C. App.1968); *Jablonski v. Washington County Mutual Fire Ins. Co.,* 13 Ill. App.2d 499, 142 N.E.2d 170 (1957); *Farber v. Great American Ins. Co.,* 406 F.2d 1228, 1231 (7th Cir.1969) (applying Indiana law); *American Fidelity & Casualty Co. v. Knox,* 164 F.Supp. 3 (D.La.1958) (applying Louisiana law); *Seaboard Mutual Casualty Co. v. Profit,* 108 F.2d 597 (4th Cir.1940) (applying Maryland law); *Malin v. Netherlands Ins. Co.,* 203 Mo.App. 153, 219 S.W. 143 (1920); *Fritz v. Pennsylvania Fire Ins. Co.,* 85 N.J.L. 171, 88 A. 1065 (1913); *Siegler v. New Amsterdam Casualty Co.,* 3 N.J.Misc. 1069, 130 A. 543 (1925); *New York Central Employees Albany Dist.,*

*supra; Nationwide Mut. Ins. Co. v. Cotten,* 280 N.C. 20, 185 S.E.2d 182 (1971); *Huston v. Travelers Ins. Co.,* 79 Ohio App. 177, 70 N.E.2d 672 (1946); *Western Casualty & Surety Co. v. Lund,* 132 F.Supp. 867 *aff'd* 234 F.2d 916 (10th Cir.1955) (applying Oklahoma law); *Frontier–Pontiac, Inc. v. Dubuque Fire & Marine Ins. Co.,* 166 S.W.2d 746 (Tex.Civ.App.1942); *Wright v. Grain Dealers Nat. Mut. Fire Ins. Co.,* 186 F.2d 956 (4th Cir.1950) (applying Virginia law); *State Farm Mut. Ins. Co. v. Pederson,* 185 Va. 941, 41 S.E.2d 64 (1947); *Ralston v. Royal Ins. Co.,* 79 Wash. 557, 140 P. 552 (1914).[35] Two early decision of the Court of Common Pleas of Pennsylvania followed the majority rule. *See Philadelphia Linen Co. v. Manhatten Fire Ins. Co.,* 8 Pa.Dist. 261, 261–62 (1899); *Pinzhoffer v. Franzen,* 46 Pa.D. & C. 234, 238 (1943).[36]

Under this rule, Phoenix's notice of cancellation was effective either on April 12, 1984 if the terms of Phoenix's certificate apply or on January 1, 1985 if the terms of the London slip apply. However, plaintiffs and CBP argue that Pennsylvania does not follow the majority rule, but instead requires notices of cancellation to comply strictly with the requirements of the policy. Plaintiffs and CBP rely on *Hanna v. Reliance Ins. Co., supra,* in support of their argument.[37]

**35.** While on their facts two decisions of the Supreme Court of Florida appear to decline to follow the majority rule, *see Silvernail v. American Fire & Casualty Co.,* 80 So.2d 707 (Fla.1955); *Graves v. Iowa Mutual Ins. Co.,* 132 So.2d 393 (Fla.1961), neither case discussed the majority rule. To the extent that either of these cases can be read as refusing to follow the majority rule, I decline to follow them.

**36.** In *Philadelphia Linen,* the insurance contract in question provided that "[t]his policy shall be canceled at any time at the request of the insured; or by the company, by giving five days notice of such cancellation." *Philadelphia Linen,* 8 Pa.Dist., at 261. On July 1, 1898, the insurer sent a notice of cancellation which stated that the policy would "cease" at noon on July 6, 1898. The insured received on the notice on July 2, 1898. The Court held that the notice canceled the policy as of July 7, 1889, in accordance with the terms of the policy, and that the insurer was not liable for a fire loss which occurred on July 10, 1889. *Id.,* at 261–62.

The Court in *Pinzhoffer* reached the same conclusion. In *Pinzhoffer,* the workmen's compensation policy at issue provided that "[t]his policy may be canceled at any time by either of the parties upon written notice to the other party stating when, not less than ten days thereafter, cancellation shall be effective." *Pinzhoffer,* 46 Pa.D. & C., at 236. On October 14, 1938, the insurer mailed a cancellation notice to the insured which stated that the policy was canceled as of October 24, 1938. The insured received this notice on October 15, 1938, and an accident occurred on October 27, 1938 for which the insured sought coverage. The Court held that the notice of cancellation was effective as of ten days after the insured's receipt of the notice, or October 25, 1938, and that the insurer by the terms of its policy was not liable. *Id.,* at 238.

**37.** Plaintiffs and CBP also cite *Kulikowich v. P. & J. Coal Co.,* 58 Pa.D. & C. 433 (1946) in support of their position. In *Kulikowich,* the

In *Hanna,* a per curiam opinion, the Pennsylvania Supreme Court affirmed a declaratory judgment decision on the opinion of the Court of Common Pleas.[38] In *Hanna,* the Court considered the effect of a cancellation clause contained in an automobile insurance policy. The cancellation clause in question stated: "This policy may be canceled by the Company by mailing to the Insured ... written notice stating when not less than ten days thereafter such cancellation shall be effective...." *Hanna,* 166 A.2d at 878. At 6:00 P.M. on December 20, 1957, the insurer mailed notice to the insured stating that the policy would terminate at 12:01 A.M. on December 30, 1957. The insured was injured in an automobile accident at 4:55 P.M. on December 31, 1957. The Court held that the insured's notice of cancellation was ineffective because it failed to comply with the terms of the policy. *Id.,* at 879–880.

Relying on *Hanna,* plaintiffs and CBP contend that Phoenix' notice of cancellation was ineffective as a matter of law. Plaintiffs and CBP argue that Phoenix' notice of cancellation, which on January 12, 1984 stated that Phoenix' coverage would terminate on March 1, 1984, did not comply with the notice of cancellation provisions in either Phoenix's certificate or the London slip. Phoenix contends that *Hanna* should be distinguished on its facts and does not control this dispute. For the reasons that follow, I conclude that *Hanna* does not control this case.

If the *Hanna* Court had applied the majority rule governing notices of cancellation, it would have held concluded that the insurer company was not liable for the insured's loss.[39] However, *Hanna* did not discuss the majority rule and did not repudiate that rule. Significantly, no Court has cited *Hanna* for the proposition that Pennsylvania does not follow the majority rule.[40] In addition, *Hanna* involved a dispute between parties with unequal bargaining power. The parties in this case, in contrast, are three large and sophisticated insurance companies, one reinsurance company and a sophisticated insurance broker. All of the negotiations involved in this case were performed at arms length.[41]

---

policy in question covered workmen's compensation coverage and provided that; "This policy may be canceled ... upon ten days written notice ... stating when cancellation shall be effective and the effective date of cancellation shall then be the end of the policy term." *Kulikowich,* 58 Pa.D & C at 434. The insurer sent written notice of cancellation to the insured by registered mail on May 28, 1942, stating that the policy would be canceled effective 12:01 A.M. on June 8, 1942. The purported cancellation date, therefore, provided less than the ten days notice required under the policy. *Id.* at 435. The Court held that "[w]hen an insurer desires to cancel insurance for technical reasons [nonpayment of premium], as in this case, we think it should be held to the strictest compliance with the terms of the policy", *id.,* and concluded that the insurer's notice was ineffectual because it did not comply with the policy terms. *Id.* In reaching its conclusion, the *Kulikowich* Court refused to follow *Philadelphia Linen* and *Pinzhoffer. Id.*

Courts have declined to apply the majority rule governing cancellation notices in workmen's compensation insurance cases on the grounds that the insurance contracts are issued for the benefits of the employees, who have no control over the contract. *See United States Fire Ins. Co. v. Fletcher,* 423 S.W.2d 89, 91–92 (Tex. Civ.App.1968); *Hauter v. Coeur D'Alene Antimony Mining Co.,* 39 Idaho 621, 228 P. 259 (1923) (collecting cases). I will follow this line of cases, and find that *Kulikowich* provides little guidance in this case because it involved an insurance contract covering workmen's compensation awards.

38. The Supreme Court set forth the lower court's opinion in full.

39. In *Hanna* the insurer sent notice of cancellation to the insured at 6:00 P.M. on December 20, 1957. Under the majority rule, that notice was effective at 6:00 P.M. on December 30, 1957 at the expiration of the policy's ten day notice of cancellation period. Because the insured's accident occurred on December 31, 1957, after the effective cancellation of the policy, the insured would not be covered.

40. The sole "authority" (if it be an authority) supporting CBP and plaintiffs' reading of *Hanna* is an American Law Reports annotation. *See* Annotation: Effect of attempt to terminate insurance or fidelity contract upon notice allowing a shorter period than that stipulated in contract, 96 A.L.R.2d 286, 293 (1964 & 1990 supp.).

41. The *Hanna* Court also emphasized the fact that the insurer had unilaterally reserved to itself the ability to cancel its coverage at any time without actual notice to the insured. But in this case, under either the London slip or Phoenix' certificate, provided the terms of the

Because *Hanna* did not consider whether the majority rule applies to sophisticated insurance entities and as jurisdiction in this case is based on diversity of citizenship, I must predict whether the Pennsylvania Supreme Court would follow the majority rule in this case. *See Conway v. White Trucks,* 885 F.2d 90, 94 (3d Cir.1989). I conclude that the Pennsylvania Supreme Court would follow the universally accepted rule in actions involving sophisticated insurance companies and brokers which enter into complex insurance contracts through arms length negotiations. Nothing in *Hanna* or in the record before me persuades me that the Pennsylvania Supreme Court would decline to follow the universally accepted rule in such a case. Under the rule, Phoenix' notice of cancellation was effective at the latest on January 1, 1985, and Phoenix cannot be liable for the April 6, 1985 loss.[42]

The policy concerns which underlie notice of cancellation provisions in insurance contracts support my conclusion in this case. "The policy or purpose behind [a] notice of cancellation provision is to inform the insured that his policy is being canceled and to afford him sufficient time to obtain other insurance protection." *Fallon v. Superior Chaircraft Corp.,* 884 F.2d 229, 231 (5th Cir.1989) (applying Louisiana law).[43] *Accord Seaboard Mut. Casualty Co.,* 108 F.2d at 599 (applying Maryland law); *Gulf Coast Investment Corp. v. Secretary of Housing and Urban Development,* 509 F.Supp. 1321, 1325 (E.D.La.1980) (applying Louisiana law); *American Fidelity and Casualty Co.,* 164 F.Supp. at 6 (applying Louisiana law); *Western Casualty & Surety Co. v. Lund,* 132 F.Supp. at 870 n. 6 (applying Oklahoma law); *Mancillas,* 595 P.2d at 268 (applying Colorado law). *See also* Couch on Insurance 2d (Rev. ed.), § 67.128 (collecting cases) ("The purpose of provisions in insurance policies for notice to the insured is to enable the insured to obtain insurance elsewhere before he is subjected to risk without protection.") In this case, Phoenix's notice of cancellation of January 12, 1984 gave CBP and plaintiffs ample time in which to obtain substitute insurance protection,[44] thus carrying out the purpose of the cancellation provisions of both the Phoenix certificate and the London slip.

### C. Plaintiffs and Cole, Booth, Potter's Motions for Summary Judgment.

■ Having concluded that Phoenix is not liable to CBP and plaintiffs for the April 6, 1985 loss, I turn to the issue of CBP's liability to plaintiffs for failing to discharge properly its duties as plaintiffs' broker. For the reasons that follow, I find that neither plaintiffs nor CBP are entitled to summary judgment on this issue.

Plaintiffs contend that BPS breached certain duties it owed to plaintiffs. Plaintiffs' First Amended Complaint alleges specifically that:

In obtaining and confirming reinsurance protection on behalf of plaintiffs, Syndi-

---

certificate or slip were met, any party could cancel the coverage. *See* Stip. 73, Ex. 65 ¶ 14; Stip. 56, Ex. 41 p. 5. Therefore, in contrast to the concerns expressed in *Hanna,* in this case, the potential cancellation terms did not prejudice any party.

**42.** Because I have concluded that Phoenix is entitled to summary judgment against plaintiffs and CBP because it issued an effective notice of cancellation, I express no opinion regarding Phoenix' alternative argument that it is entitled to summary judgment because it canceled properly due to plaintiffs' non-payment of premiums. *See* Phoenix's reply Memorandum of Law in Support of Phoenix' Cross–Motion for Summary Judgment against the Plaintiffs, at 20–23.

**43.** I note that in *Fallon,* the Court of Appeals affirmed on the basis of the opinion of the

District Court, which it attached as an appendix to its opinion. *Fallon,* 884 F.2d at 230.

**44.** The communications between Phoenix and CBP subsequent to the January 12, 1984 telex should have placed CBP on notice that Phoenix no longer considered itself on the Reynolds account. On March 6, 1984, Phoenix advised BPS that its coverage expired on March 1, 1984. Stip. 84, Ex. 75. On May 23, 1984, Phoenix advised BPS, "Phoenix is not at risk any longer." Stip. 86, Ex. 77. On August 15, 1984, Phoenix advised BPS, "As of 3/1/84, we are not on this account." Stip. 98, Ex. 90. All of these notifications would constitute sufficient notice of cancellation under either the cancellation terms of Phoenix' certificate or the terms of the London slip.

cate No. 848, Syndicate No. 109, ICI and Unionamerica, defendant BPS owed plaintiffs certain duties, including: (a) the duty to communicate adequately and correctly the terms of the reinsurance coverage to those reinsurance markets it solicited; (b) the duty to communicate to plaintiffs any requests for information made by the reinsurers; (c) the duty to communicate to plaintiffs any attempts to terminate coverage by the reinsurers; (d) the duty to confirm reinsurance coverage and notify plaintiffs of any uncovered exposure on their behalves; and (e) the duty to obtain alternative reinsurance coverage for any risks of plaintiffs which it knew to be exposed or to be in risk of exposure.

Plaintiffs' First Amended Complaint, ¶ 59.

Under Pennsylvania law,[45] an insurance broker owes a duty of reasonable care to its customer:

> [A]n insurance broker is under a duty to exercise the care that a reasonably prudent businessman in the brokerage field would exercise under similar circumstances and if the broker fails to exercise such care and if such care is the direct cause of loss to his customer, then he is liable for such loss unless the customer is also guilty of failure to exercise care of a reasonably prudent businessman for the protection of his property and business which contributes to the happening of such loss.

*Industrial Valley Bank & Trust Co. v. Dilks Agency,* 751 F.2d 637, 640 (3d Cir. 1985), (quoting *Consolidated Sun Ray, Inc. v. Lea,* 401 F.2d 650, 656 (3d Cir.1968), *cert. denied* 393 U.S. 1050, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969)).

After review of the stipulated facts, affidavits and deposition testimony, I conclude that there are issues of material fact concerning the existence and extent of any duties which BPS may have owed to plaintiffs. Assuming that some duty or duties existed, I also find that there are issues of material fact concerning whether BPS breached any of its obligations to plaintiffs. Therefore, I will deny CBP's motion for summary judgment against the plaintiffs and will deny plaintiffs' motion for summary judgment against CBP.

## V. *Conclusion.*

For the foregoing reasons, I will grant defendant Phoenix's motion for summary judgment against both Cole, Booth, Potter and plaintiffs. I will deny Cole, Booth, Potter's motion for summary judgment against CBP and plaintiffs and deny plaintiffs' motion for summary judgment against Cole, Booth, Potter and Phoenix.

---

**45.** As noted above, *see* discussion, *supra,* n. 17, plaintiffs and CBP agree that Pennsylvania law